THE PEOPLE OF THE STATE OF NEW YORK, Appellants, *v.* CORNELIUS M. HORTON et al., Respondents.

Slight inconveniences and occasional interruptions in the use of a highway or navigable stream, which are temporary and reasonable, are not illegal merely because the public may not, for the time, have the full use of the highway or stream.

If a craft of any kind is adapted for use in any employment for which a canal may lawfully be used, and is actually employed in a business lawful in itself, and does not in the conduct of such business unreasonably or unnecessarily obstruct the navigation of the canal by other vessels, a court of equity will not forbid the use of the craft in such employment; and this, although some obstruction to the free passage of vessels necessarily results from the peculiar employment.

It is not the province of a court of equity to proscribe one branch of a business in which a party is engaged, while permitting every other branch of the same business to be carried on in the same locality and with the same instrumentalities.

Defendants were the owners of a floating elevator, which was used by them in the "Buffalo City Ship canal" (an artificial channel, forming part of the harbor of that city), for the purpose of transferring grain in bulk from lake vessels to canal boats, moving from place to place as required. When not in use it was moored opposite lands owned by

defendants. The channel of the canal is 160 feet wide. When employed in unloading a vessel, with the vessel on one side and a canal boat on the other, the three craft occupy less than eighty feet of the channel, and a transfer of the load of a vessel is made in a few hours. Vessels moving in the canal are moved by steam power. In an action by the attorney-general in behalf of the people, a judgment was rendered restraining such use, but allowing the use of the elevator for unloading vessels aground or for any other purpose. *Held*, error; that the use was not an unnecessary, unreasonable and unlawful use of the canal, or an unreasonable and unlawful obstruction to trade and commerce, but was in aid of commerce.

Defendant offered to prove on the trial that the use of their elevator lowered the price for transferring grain, and induced trade which would otherwise have gone to foreign ports, which evidence was excluded. *Held*, error, as the question was directly presented whether the slight obstruction resulting from the use of the elevator was not more than balanced by the public benefit.

(Argued April 3, 1876; decided April 11, 1876.)

Appeal from order of the General Term of the Supreme Court in the fourth judicial department reversing a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 5 Hun, 516.)

This action was brought by the attorney-general to restrain defendants from locating, stationing or mooring a floating elevator owned by them in the City Ship canal of Buffalo, and to abate the same as a nuisance.

The court found, in substance, that the City Ship canal mentioned in the complaint is located within the limits of the city of Buffalo, and is an artificial channel of water, constructed for the purpose of increasing the shipping and commercial facilities in the harbor of Buffalo, and is used for the purpose of a harbor and for the passage of vessels that frequent the harbor of Buffalo; that the said canal is about two miles long, 200 feet wide, between thirteen and fourteen feet deep, with sloping banks, leaving the channel of the same nearly 160 feet in width; that the lands abutting on said canal are owned by private individuals, and are used in most instances as places for business connected with the trade and commerce done in the harbor of Buffalo; that the defendants are in the legal and rightful possession of

a parcel of land lying on the north and river side of said canal and abutting thereon, with about 200 feet frontage thereon; that the same is about 960 feet from the intersection of the canal with Buffalo river, and is in one of the most used and important parts of such canals; that the defendants own in their own right and have possession of, manage, use and control a structure commonly called a floating elevator, and the same is used and kept by the said defendants in the waters of Buffalo harbor; that the same is about ninety-six feet long, twenty-four feet wide, and draws between two and three feet of water, and is capable at all times during the season of navigation of being moved to and from all places in the said harbor; that it possesses no motive power of its own, and when moved from place to place, the same is done by steam tugs or otherwise; that there is placed thereon, and made part thereof, machinery and fixtures suitable for the purpose of transferring cargoes of grain in bulk from one floating vessel to another with safety, cheapness and dispatch; that, during the season of navigation, for a year preceding the trial of this action, the said defendants have for the most of the time had and kept the said structure moored in the said canal at a point opposite the said premises so occupied by them, and when not in use made fast to the wharf on said premises; that the said defendants, during the season of navigation, are, by the means and use of said structure, doing and carrying on the business of transferring cargoes of grain in bulk from propellers and other water crafts to canal boats; that the said structure is capable of transferring from one vessel to another from 4,000 to 6,000 bushels per hour, and during the present season has so transferred at least 1,000,000 of bushels; and there is also contrived and placed in said structure the proper means of weighing grain, and frequently cargoes are so weighed during the process of transfer; that the usual and customary way of carrying on such business is as follows: A vessel from the lake loaded with grain, desiring to transfer her cargo into canal boats by means of the said floating elevator, moves up to the wharf occupied by the

defendants and makes fast, laying side to; then the said structure or elevator is placed in position beside the vessel outside; then the canal boat is stationed on the out or water-side of the elevator and remains stationary until the cargo is transferred; that, in the transfer of the cargo, no buildings, conduits or machinery stationed on the wharf are used; that the amount of grain transferred is so great that during the present season the said structure is in actual use much of the time and at the place and in the manner aforesaid; that the said structure is well adapted to the use of relieving vessels loaded with grain and aground in the harbor of Buffalo, and has capacity to receive on board a portion of a cargo and to be used as a lighter, and is occasionally and as often as called upon by defendants for such purpose in Buffalo harbor at all places where vessels are aground; that the business carried on by the said defendants in said canal by means of said structure in transferring cargoes of grain in bulk from one vessel to another vessel in the mode and manner aforesaid, when the vessel from which the cargo is transferred is not stranded, aground or disabled, is an unnecessary, unreasonable and unlawful use of the said canal and harbor of Buffalo, and is an unnecessary, unreasonable and unlawful obstruction to the trade and commerce carried on in the said canal and in the harbor of Buffalo.

And also found the following conclusion of law: That the use made by the defendants of the floating elevator and the purpose to which they have heretofore and are now applying the same in the said City Ship canal is an unnecessary, unreasonable and unlawful obstruction of the said City Ship canal, and unreasonably and unlawfully hinders and impedes the navigation of said City Ship canal, and devotes it to a use and purpose foreign from those for which it was by law designated and intended; and judgment was directed perpetually enjoining and restraining the defendants from using the said floating elevator in the City Ship canal as a means and in the business of loading and unloading vessels freighted with grain in bulk, when and in instances the vessel being

loaded or unloaded is not aground or otherwise disabled, and is capable of being navigated; that the judgment herein is in nowise to prevent or interfere with the use by the defendants of said structure or elevator in lightering or unloading vessels or crafts in the said City Ship canal that are aground or otherwise disabled, nor from using the same for purposes not so expressly enjoined and forbidden.

Judgment was entered accordingly.

*G. A. Scroggs* for the appellants. Defendants, in using their elevator, unlawfully obstructed and encroached upon a public highway for private purposes, and thereby a nuisance was created. (*Hart* v. *Mayor*, 9 Wend., 571, 584; *Davis* v. *Mayor*, 14 N. Y., 506; *People* v. *Cunningham*, 1 Den., 524; *King* v. *Russell*, 6 East, 427; *Rex* v. *Jones*, 3 Campb., 230; *Gold* v. *Carter*, 9 Hump. [Tenn.], 369, 381; *King* v. *Ward*, 4 Ad. & El., 94; *King* v. *Cross*, 3 Campb., 224; *D. and H. Canal Co.* v. *Lawrence*, 2 Hun, 163, 181; 7 Co. Litt., 277 *b*; Story's Eq. Jur., § 921; 4 Black. Com., 167; Wil. Eq. Jur. [Potter's ed.], 399; 6 Mod., 145; Edm. on Inj., 161; *Attorney-General* v. *Richards*, Aust. R., 606; *Rex* v. *Carlile*, 6 C. & P., 636; *King* v. *Moore*, 3 B. & Adol., 184; *Com.* v. *Passmore*, 1 S. & R., 219.) The action was properly brought by the attorney-general in the name of the people. (Wil. Eq. Jur. [Potter's ed.], 389, 391, 401; *People* v. *St. Louis*, 5 Gilm., 351; High on Inj., 526; *Attorney-General* v. *Hunter*, 1 Dev. Eq., 12.) Courts of equity will grant an injunction to prevent a threatened or attempted obstruction of public navigation. (*People* v. *Vanderbilt*, 38 Barb., 287; *Attorney-General* v. *Johnson*, 2 Wils. Ch., 87; *Lane* v. *Newdigate*, 10 Ves., 192; 2 Story's Eq., §§ 921, 922; *Attorney-General* v. *Cohoes Co.*, 9 Paige, 133; *Attorney-General* v. *Utica Ins. Co.*, 2 J. Ch.; *Corning* v. *Lawrence*, 6 id., 439; *People* v. *Kerr*, 27 N. Y., 188; Dil. on Munic. Corp., § 529.)

*M. A. Whitney* for the respondents. This action could not be maintained, as an adequate remedy exists under the char-

ter and ordinance of the city of Buffalo, to abate and prevent all obstructions and nuisances in the City Ship canal or harbor. (1 Story Eq. Jur., § 641; *Mayne* v. *Griswold*, 3 Sandf., 463; 9 N. Y. Leg. Obs., 25; *Crippen* v. *Hudson*, 13 N. Y., 163; *Voorhies* v. *Howard*, 43 id., 371; Laws 1870, chap. 519; *Attorney-General* v. *Brown*, 24 N. J. Eq., 89; *Rowe* v. *Granite Bridge Co.*, 21 Pick., 347; *M. and E. R. R. Co.* v. *Prudden*, 5 C. E. Green, 532; High on Inj., § 521; 3 Dan. Ch. Pr., 1740; *Hicker* v. *N. Y. Bal. Dock Co.*, 24 Barb., 215.) The question whether defendants' elevator was a benefit to commerce was a question of fact. (*D. and Hud. C. Co.* v. *Lawrence*, L. J. Dec. 19, 1874, p. 394.) Defendants' elevator was not a nuisance. (*Peckham* v. *Henderson*, 27 Barb., 207; *Griffith* v. *McCullum*, 46 id., 561; *Howard* v. *Robbins*, 1 Lans., 63.)

ALLEN, J.   There is no question, in this action, of purpresture or an obstruction of the canal as a public highway by any permanent structure; neither is there complaint of any injury to the banks or walls of the canal, or permanent injury to the navigation. The complaint is of the use of the defendants' float for a single purpose, and the judgment only prohibits its employment for the transfer of grain in bulk from one vessel to another. Its presence in the canal, and its employment for any other purpose to which it is adapted, is not forbidden by the judgment. The evidence that the float, at any time, in the least obstructed the navigation of the canal is very slight — at the most, causing vessels occasionally to slacken their speed when passing the elevator when in actual use in the service condemned by the judgment. In such instances, the speed of a passing vessel has been slackened from prudential considerations, but whether to avoid a collision, or lest a more rapid rate of speed might part the lines by which the vessels were made fast to the elevator is doubtful. Had the learned judge found that the employment and use of the elevator did not materially hinder or obstruct the navigation of the canal, or its use for com-

mercial purposes and as a public highway, the finding would
have been fully warranted by the evidence.   It is not objected
that an action will not lie by the people to restrain and abate
a nuisance upon a public highway or prevent injury to public
property; and it is not controvered that an obstruction to a
highway by which the public are deprived of its use consti-
tutes a nuisance.   At the same time, it is not every slight
interference with the use of a highway or a navigable stream
that will amount to a nuisance, and be indictable as such, or
the subject of an action either for its abatement.   Slight
inconveniences and occasional interruptions are incidental to
many lawful uses of public highways and water-courses, and
are tolerated by reason of necessity and the benefits resulting
to the public at large by the acts causing the interruption.
If the obstructions are temporary and reasonable, they will
not be declared illegal merely because the public may not for
the time have the full use of the highway.   There is no law
of the State, or ordinance of the city of Buffalo, prescribing
the form or size of any vessel or float, or the manner in which
it shall be navigated within the harbor or "city canal" in
Buffalo, or prescribing the business in which it may be
employed, or the means by which it shall be propelled.   The
judiciary cannot legislate upon the subject.   If a craft of
any kind is adapted for use in any employment for which the
canal may be lawfully used, and is actually employed in a
business lawful in itself, and does not in the conduct of such
business unreasonably or unnecessarily obstruct the naviga-
tion of the canal by other vessels, a court of equity cannot
forbid the use of such craft in such employment.   That some
obstruction and hindrance to the free passage of vessels does
necessarily result from the peculiar employment of the craft
or vessel will not make such use illegal, or convert such
employment, otherwise lawful, into a criminal offence, and
subject the owner to an indictment for a nuisance.   It must
be assumed, from the findings of fact and the judgment of
the court, that the presence of the defendants' elevator in the
canal is proper; that her use in any part of the canal

and the moving of her from place to place is lawful; and that her employment in any way other than in the trans-shipping of grain in bulk is lawful. It is not claimed that the transfer of grain from vessel to vessel in the canal is *per se* unlawful. There is no pretence that in such transfer by the defendants, by means of their elevator, there was any unnecessary occupation of space in the canal, or obstruction of the navigation. It is very evident that the use of the elevator is not prejudicial to the public interests or to the commerce of the city of Buffalo or of the State. It is possible that it may interfere with the profits of a few having rival elevators upon land, who, it would seem, not only combined for a higher tariff of charges, for services of the same character as those rendered by means of the floating elevator, than was exacted by the defendants, thus more heavily taxing commerce, but also to instigate and prosecute this action. It would seem that the defendants and their elevator were not in the combination in respect to the tariff, simply because they could not secure satisfactory terms, so that fact does not entitle them to any commendation. Although the craft complained of was not engaged in the carrying of merchandise, or in the towing of vessels so employed, and thus was not, perhaps, employed actually in navigating the canal, she was used as an auxiliary to the commerce of the canal and of the city of Buffalo.

The canal is a part of the harbor of Buffalo, and in it and upon its banks much of the large commerce of that city is carried on. The large quantities of grain brought in lake vessels to that port and destined to an eastern market are necessarily transferred to canal boats and barges, and any instrumentality by which such transfer can be effected with dispatch and at low rates for the service is an aid rather than a hindrance to the commerce of the canal, and justifies any slight obstruction which the act of transfer may cause to the navigation. The almost constant employment of the elevator by vessel owners and consignees is very high evidence that the facilities afforded by it and its owners, by

its means, are promoters of, rather than obstructions to, the commerce of the canal and of the city. The general conclusion of fact that the business carried on by means of the defendants' float, in transferring grain in bulk from one vessel to another, when the vessel from which the cargo is transferred is not stranded, aground or disabled, "is an unnecessary, unreasonable and unlawful use of the said canal and harbor of Buffalo, and is an unnecessary, unreasonable and unlawful obstruction to the trade and commerce carried on in the said canal and in the harbor of Buffalo," which is but an inference of the learned judge from the specific facts proved and found, is not warranted by, but is repugnant to and inconsistent with; such facts. The canal is 200 feet wide, with sloping banks, giving a clear, navigable channel 160 feet in width, and more than thirteen feet depth of water; the elevator of the defendants, with a vessel upon one side and a canal boat upon the other, occupies less than eighty feet in width; thus leaving more than one-half of the navigable channel of the canal for other vessels, and is capable of transferring from one vessel to another from 4,000 to 6,000 bushels of grain per hour; and prior to the 16th of June, 1874, had transferred, during the season of navigation of that year, at least 1,000,000 bushels of grain, from vessels to canal boats, for transportation.

These facts are entirely irreconcilable with the theory that the use of this elevator in that business is an obstruction to the commerce of Buffalo; and the space left by the elevator, when in this service, for the passage of other vessels, is ample in view of the fact that the vessels in that channel are either propelled by steam power of their own or moved by steam tugs; and the dispatch with which it is capable of discharging the cargo of a vessel shows that but a few hours, at most, are required for the transfer of the cargo of any vessel arriving in the harbor; so that the occupation of the space of which complaint is made for any one service or at any one point, is very brief in point of time. The learned judge, upon the trial, discriminated between the use of an elevator

for the transfer of grain from a vessel when stranded and a like transfer from the same vessel when afloat and free to move; but there is nothing in the emergency of a grounded vessel which will make an act lawful that would be unlawful under other circumstances. Other means could be resorted to to relieve the grounded vessel; and the master of a vessel afloat should have the same right to choose the facilities and instrumentalities for a speedy discharge of his cargo as the master of a stranded vessel has secured to him by the judgment of the court at Special Term. That employment cannot be unnecessary, unreasonable and unlawful which is lawful in itself and conducted in a proper manner and in furtherance of the business and commerce of the locality in which it is carried on. It is not the province of a court of equity, in the absence of any positive law, to proscribe one branch of a general business in which a party is engaged while permitting every other branch of the same business to be carried on in the same locality and with the same instrumentalities. There is no business done upon the canal, whether loading or unloading salt, staves, lumber, iron or other merchandise, or navigating the canal, which may not to some extent, for the time being, interfere with the free use of the canal by other vessels; but this does not make the business unlawful. A vessel and a canal boat lying side by side at the wharf of an elevator stationary upon the land, during the transfer of grain from one to the other, will, to some extent, obstruct the navigation, but that would not justify an action by the attorney-general either to abate the elevator as a nuisance or prohibit its employment in that manner. The right of passage in this canal as a public highway, is subordinate to and controlled by the claims of trade and commerce; and the same considerations which control in the case of navigable streams, must determine the legality of any structure in aid of commerce which is claimed to be an obstruction.

Tested by those rules the use of the defendants' elevator for any purpose as an auxiliary to the commerce and the navigation and use of the canal, could not, upon the evidence,

or the findings of the judge in this case, be condemned as unlawful. The employment being lawful the question was directly presented, whether the slight obstructions resulting from the means used were not more than balanced by the public benefits and the facilities rendered to the commerce of the canal and of the city, and it was error to refuse to consider them. (*D. and H. Canal Co.* v. *Lawrence*, 10 Albany Law Journal, 394.)

There was no permanent appropriation by the defendants of any part of the canal to their own use, they rendering service to the vessels employing them wherever wanted. The cases in which indictments have been sustained for a nuisance in the obstruction of highways, or suits in equity maintained for the removal of obstructions, are those in which there has been a permanent encroachment by an embankment or other structure, or some threatened or actual injury to the public works, or such a permanent and continued occupation of the highway for a purpose foreign to and inconsistent with its use by the public as to amount to a permanent obstruction. (*King* v. *Ward*, 4 A. & E., 384; *King* v. *Russell*, 6 East, 427; *People* v. *Cunningham*, 1 Den., 524; *Attorney-General* v. *Cohoes Co.*, 6 Paige, 133.) *Hart* v. *The Mayor, etc., of Albany* (9 Wend., 571), was the case of a bill filed by the complainants to restrain the defendants from enforcing an ordinance which prohibited the continuance and maintenance of a float or ark, which they had constructed and permanently moored in the Albany basin, by means of which they had appropriated permanently, for their own personal profit a portion of the basin, which was constructed as a harbor for floats and vessels navigating the Hudson river or engaged in transhipping produce and merchandise. The injunction was dissolved by the chancellor and the order was sustained, upon appeal, by the Court for the Correction of Errors. Judge Sutherland delivered an opinion for the affirmance of the order, principally upon the ground that the complainants had failed to show a case entitling them to the special interposition and protection of a court of equity,

according to the well-established principles of that court. Senator TRACY concurred in the result of Judge SUTHER-LAND's opinion, and on the same ground, saying that, the complainants did not show that the injury they might sustain by the destruction of their float would be remediless at law. He added that he did not consider the question whether the float was or was not a common nuisance, to be necessarily involved in the case as to require the solution of it. Senators ALLEN and EDMONDS also delivered opinions for affirmance; the former upon the ground that the common council of the city of Albany had power to enact and execute the ordinances complained of, as a police regulation, to abate a common nuisance. The case is not an authority for holding that the use by the defendants of their elevator for unloading grain in bulk is illegal. To declare so would be a species of legislation; and, under the circumstances of this case, an extension of the jurisdiction of a court of equity unauthorized by any precedent that has come under my observation.

The affirmance of the order of the General Term and a dismissal of the complaint will not prevent an indictment of the defendants for a nuisance, on the trial of which, the facts can be determined by a jury; or, if an indictment will not lie and legislation is necessary to protect either the public or rival elevators, it must be sought from the legislature of the State or the common council of the city of Buffalo.

The order granting a new trial must be affirmed, and judgment absolute for the defendants.

All concur; MILLER, J., not sitting.

Order affirmed, and judgment accordingly.