TOWN OF RIDGEWAY v. TREMAN, State Superintendent of Public Works.

(Supreme Court, Special Term, Erie County. June, 1911.)

1. CANALS (§ 17*)—BRIDGES—APPORTIONMENT OF COST.

The burden of erecting and operating a canal bridge, more costly for the state and more convenient for a town than an ordinary road bridge, such as a lift bridge, may be divided between the state and the town by legislative provision.

[Ed. Note.—For other cases, see Canals, Cent. Dig. § 25; Dec. Dig. § 17.*]

2. CANALS (§ 17*)—LIFT BRIDGES—OPERATION.

The expense of operating a lift bridge built over a canal at state expense may be made a town charge by legislative authority or by vote of the town; but, under Town Law (Consol. Laws 1909, c. 62) § 170, subsecs. 3, 4, providing that town charges shall include moneys authorized to be raised by a vote of the town for any town purpose and sums directed to be raised by law, an agreement by a town board to pay the expense of operating a lift bridge, built by the state over a canal, without being so authorized, is void.

[Ed. Note.—For other cases, see Canals, Cent. Dig. § 25; Dec. Dig. § 17.*]

3. CANALS (§ 17*)—ELEVATION OF LIFT BRIDGE.

A town board's breach of a void agreement to pay the expense of operating a lift bridge, built at state expense, did not warrant the state superintendent of public works in permanently raising the bridge and refusing to operate it; such act, without legislative authority, being an obstruction of the highway, and a nuisance.

[Ed. Note.—For other cases, see Canals, Cent. Dig. § 25; Dec. Dig. § 17.*]

4. CANALS (§ 17*)—LIFT BRIDGES—OPERATION.

On erection of a lift bridge at state expense on a highway over a canal, under a town board's unauthorized agreement to pay the operating expense, the state superintendent of public works must operate the bridge at public expense, until legislative remedy is obtained, or until the bridge is replaced by an ordinary bridge.

[Ed. Note.—For other cases, see Canals, Cent. Dig. § 25; Dec. Dig. § 17.*]

5. EVIDENCE (§ 50*)—JUDICIAL NOTICE—OPERATION OF CANALS.

The Supreme Court takes judicial notice that the Erie Canal is operated.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 50.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EVIDENCE (§ 83*)—PRESUMPTIONS—PUBLIO APPROPRIATIONS.
    Appropriations for the Erie Canal will be presumed not to have been exhausted.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83.*]

7. CANALS (§ 17*)—LIFT BRIDGES—OPERATION.
    The state superintendent of public works cannot excuse refusal to lower a canal lift bridge on a highway because funds are not available to operate the bridge.
    [Ed. Note.—For other cases, see Canals, Cent. Dig. § 25; Dec. Dig. § 17.*]

Mandamus by the Town of Ridgeway against Charles E. Treman, State Superintendent of Public Works. Order entered.

Irving L'Hommedieu, for the motion.
Henry W. Killeen, opposed.

POUND, J. It appears from the papers that in constructing the Barge Canal a highway bridge at Knowlesville was removed, and was to be replaced. It may be assumed, although that does not definitely appear, that the bridge was a fixed bridge. The Barge Canal plans for the work at the point in question called for another fixed bridge. The citizens and officers of the town of Ridgeway were desirous of having a lift bridge in place of a fixed bridge, and represented to the canal board that the town would pay the expense of maintenance, or at least pay the bridge tenders to operate a lift bridge. The highway was in existence before the Erie Canal was built. The reason for the preference for a lift bridge appears to be the fact that a fixed bridge would have to be at a high elevation, with approaches on each side at a steep grade; whereas the lift bridge would permit the crossing of the canal on the same grade as the existing highways.

On September 22, 1909, the state engineer presented a communication to the canal board, setting forth that the town would provide the necessary power to operate the lift bridge, if one should be installed, and practically advising the change. Thereupon, and on the same day, the canal board passed a resolution providing for the substitution, on condition "that the expense and maintenance of such bridge be borne by the locality." This resolution was communicated to the supervisor of the town of Ridgeway, and thereupon, and on October 30, 1909, the town board of Ridgeway duly passed the resolution appearing in the moving papers, which resolution in terms recited that the town board "hereby undertakes that the said town of Ridgeway will pay the expense of operating a lift bridge." The resolution, however, recognized the doubt as to the legality of the action of the town board, by providing that it was to be operative only in the event that the town board could obligate the town to pay such expense. Thereupon plans for the change were prepared, and in November, 1909, the change was formally recommended by the canal board, the—

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"recommendation being predicated on the adoption by the town board of the town of Ridgeway of a resolution pledging such town to the operation of such lift bridge during the open season of navigation."

In other words, it appears that the state officials acted upon the belief and assumption that the town of Ridgeway would take such steps as might be necessary to clothe itself with the power to pay the bridge tenders, and acting upon that belief and assumption changed the plans and contracted and paid for a bridge more expensive to the state than the fixed bridge originally planned and contracted for. Proof of the increased expense is the statement to that effect of the superintendent of public works. The town of Ridgeway has not undertaken to procure the funds with which to pay bridge tenders, refuses to pay the money, and alleges a want of power. Finding that the town would not pay the bridge tenders, and would not reimburse the state for the pay of the bridge tenders who were put on by the superintendent of public works at the opening of navigation in May, 1911, the superintendent laid off the bridge tenders and raised the bridge, leaving it up in the air.

[1] The expenses and wages of bridge tenders appointed by the superintendent of public works to work a lift bridge over the Erie Canal, constructed at the request of the town board for the convenience of the town public, *may* be made a town charge, although the bridge tenders are state employés. The burden of erecting and operating a bridge, more costly for the state and more convenient for the town than the ordinary road bridge, may be so divided between the state and the town. This is frequently done, both by general and special act of the Legislature, and I see no constitutional difficulty in the way. Canal Law (Consol. Laws 1909, c. 5) § 126; Sun Pub. Ass'n v. Mayor, 152 N. Y. 257, 264, 265, 46 N. E. 499, 37 L. R. A. 788; Gilligan v. Town of Waterford. 91 Hun, 21, 36 N. Y. Supp. 88.

If a town builds a lift bridge wholly or partly *at its own expense,* under section 126 or section 127 of the canal law, the wages of bridge tenders are *directed by law* to be paid by the town. This statute has been upheld in Failing v. City of Syracuse, 4 Misc. Rep. 50, 24 N. Y. Supp. 705. See, also, Matter of·Agar, 21 Misc. Rep. 145, 47 N. Y. Supp. 477. The question is whether the expense of the operation of the Knowlesville lift bridge *has been* made a town charge.

[2] The expense of operating a lift bridge, built at state expense, may be made a town charge, either by express legislative direction or by vote of the town. Town Law (Consol. Laws 1909, c. 62) § 43, subsec. 11, authorizes the electors of each town at town meeting to determine any question lawfully submitted to them, and Town Law (Consol. Laws 1909, c. 62) § 170, subsecs. 3, 4, provides that town charges shall include the moneys *authorized* to be raised by the vote of the town for any town purpose and every sum *directed by law* to be raised for any town purpose.

No direction of law *requires* the money to pay bridge tenders to be raised by the town of Ridgeway in this case, nor has the town *authorized* the moneys to be raised by the vote of a town meeting

for that purpose. The town board had no authority to bind the town to pay the bridge tenders, and its resolution was a nullity on its face. The expense has, therefore, not been made a town charge, under Town Law, § 43, subsec. 11, and section 170, subsecs. 3, 4, and funds for the reimbursement of the state for the payment of these bridge tenders have not been provided.

[3] But it does not follow that the superintendent of public works is thereby justified in permanently raising the bridge or refusing to operate it. Such act, done without legislative authority, obstructs the town's highway, and interferes with the right of the public freely to travel thereon, and technically creates a nuisance. People v. Horton, 64 N. Y. 610, 620.

[4] In the absence of legislative authority or binding agreement to the contrary, as the situation now presents itself, the superintendent of public works is required by section 121 of the canal law to maintain and operate this bridge at public expense as a lift bridge, so long as it forms a part of the existing highway. If the town does not act in the matter, a legislative remedy may be sought, or the lift bridge may be replaced by the ordinary road bridge.

[5–7] It is alleged in the papers read in opposition to this motion, upon information and belief, that no funds are available out of which the superintendent of public works may pay these bridge tenders. This allegation is in the nature of a conclusion merely. The court will take judicial notice that the canal is being operated, and it will assume that the appropriations therefor are not exhausted. But, if the money cannot be legally expended by the superintendent, he may lower the bridge until funds are available.

So ordered.