THE SUN PRINTING AND PUBLISHING ASSOCIATION et al., Appellants, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, THE BOARD OF RAPID TRANSIT RAILROAD COMMISSIONERS in and for the City of New York, et al., Respondents.

1. RAPID TRANSIT ACTS — CONSTITUTIONALITY. The Rapid Transit Acts (L. 1894, ch. 752; L. 1895, ch. 519, amending L. 1891, ch. 4), which authorize cities of over one million inhabitants to construct railroads therein which shall be deemed public highways, at their own expense, if so determined by the vote of a majority of the electors, and to issue bonds in payment therefor, are not violative of the Constitution.

2. CONSTITUTION, ART. 8, § 10 — CITY PURPOSE. To constitute a "city purpose," within the meaning of the provision of the Constitution (Art. 8, § 10) which prohibits cities from incurring any indebtedness except for a city purpose, the purpose must be necessary for the common good and general welfare of the people of the municipality, sanctioned by its citizens, public in character and authorized by the legislature.

3. RAILROADS — HIGHWAYS. Railroads are highways, and as such may properly be deemed to be for a municipal purpose, when constructed by a municipality.

4. RAILROADS — CITY PURPOSE. Railroads, being necessary for the common welfare of the people, required for their use and public in character, are for a "city purpose," within the meaning of the Constitution, when authorized by the legislature and constructed and owned by the city in whose territory they are located.

33

5. CONSTITUTION, ART. 8, § 10 — LOAN OF MUNICIPAL CREDIT. The Rapid Transit Acts, which provide that in case a railroad shall be constructed by a city, and at its expense, bonds of the city shall be issued to pay therefor, do not contravene the provision of the Constitution (Art. 8, § 10) which forbids the loaning by a municipality of its credit to or in aid of any individual, association or corporation, in that the acts provide for leasing the road for operation by the lessees, but not in perpetuity.

6. CONSTITUTION, ART. 8, § 10 — LOAN OF MUNICIPAL CREDIT. The provision of the Constitution (Art. 8, § 10), that "no county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation," was not intended to, and does not, prohibit municipalities from constructing their own roads and paying therefor, when necessary and authorized by the legislature, and does not apply to a railroad constructed or owned by a municipality, or affect the character of the use or the purpose for which it was constructed.

7. CONSTITUTION, ART. 3, § 18 — RAILROADS. The provision of the Constitution (Art. 3, § 18) which prohibits the legislature from passing a private or local bill granting to any corporation, association or individual the right to lay down railroad tracks, does not apply to a grant to a municipality.

8. CONSTRUCTION OF RAILROAD BY CITY OF NEW YORK. In view of the conditions of travel in the city of New York, the proposed construction by the city, at its own expense, of a railroad, under the Rapid Transit Acts, on the failure of private enterprise and capital to intervene, is necessary for the welfare of the people and required by them, is public in character, and authorized by constitutional legislation, and, hence, is for a "city purpose" and should not be restrained.

*Sun Publishing Assn.* v. *Mayor,* 8 App. Div. 230, affirmed.

(Argued January 21, 1897; decided March 23, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered September 10, 1896, which affirmed a judgment in favor of defendants entered upon a decision of the court dismissing the complaint upon the merits on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Franklin Bartlett* for appellants. Constitutional safeguards should be upheld. (Const. of N. Y. art. 14, §§ 1, 2; *Marbury* v. *Madison,* 1 Cranch, 177; *Norton* v. *Shelby Co.,* 118

U. S. 442 ; *Huntington* v. *Worthen*, 120 U. S. 101 ; *People ex rel.* v. *Albertson*, 55 N. Y. 55.)  Any scheme to embark a state or a city in the business of running a railroad is dangerous to the commonwealth or to the municipality.  (*In re N. F. & W. R. Co.*, 108 N. Y. 385.)  The Rapid Transit Acts (Ch. 752, L. 1894, and ch. 519, L. 1895) are unconstitutional and void, because they violate the provision found alike in the old and in the new Constitution, that " no county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation."   (Const. of 1846, art. 8, § 11 ; Const. of N. Y. art. 8, § 10 ; *People* v. *Petrea*, 92 N. Y. 128 ; 18 N. Y. 38 ; 23 N. Y. 439 ; 35 N. Y. 550 ; 66 N. Y. 129 ; *Pleasant Township* v. *Æ. L. Ins. Co.*, 138 U. S. 67 ; *Wyscaver* v. *Atkinson*, 37 Ohio St. 80 ; *Counterman* v. *Dublin Township*, 38 Ohio St. 515 ; *Taylor* v. *Ross Co.*, 23 Ohio St. 76.)   These Rapid Transit Acts violate the 2d clause of section 10 of article 8 of the Constitution, which provides that " no city shall be allowed to incur any indebtedness, except for city purposes," because a rapid transit railway is not a municipal or city purpose.  (Const. of 1846, art. 8, § 11 ; Const. of N.Y. art. 8, § 10.)  The two principal Rapid Transit Acts (Ch. 752, L. 1894, and ch. 519, L. 1895) are unconstitutional and void, because they violate the constitutional provisions contained in both the old and new Constitutions, and found in article 3, section 18.  (*In re Oliver Lee & Co.'s Bank*, 21 N. Y. 9 ; *People ex rel.* v. *Mitchell*, 31 Ohio St. 592 ; *State ex rel.* v. *Anderson*, 44 Ohio St. 247 ; *Coutieri* v. *New Brunswick*, 44 N. J. L. 58 ; *Stack* v. *City of Brooklyn*, 150 N. Y. 335 ; *People* v. *O'Brien*, 38 N. Y. 193 ; *In re N. Y. El. R. R. Co.*, 70 N. Y. 350.)  The provision for the filling of vacancies in the offices created by the Rapid Transit Act of 1894 (Ch. 752) is unconstitutional and void, because it violates section 2 of article 10 of the then Constitution of the state of New York in that it provides for the filling of offices neither by an election by the

people nor by an appointment. (L. 1894, ch. 752, § 1.) The Rapid Transit Act of 1894 (Ch. 752) and the Rapid Transit Act of 1895 (Ch. 519) are unconstitutional and void, because they violate section 6 of article 1 of the Constitution, in that they fail to provide just compensation. (L. 1894, ch. 752, §§ 39, 40; L. 1895, ch. 519; *Cherokee Nation* v. *Kansas Ry. Co.*, 135 U. S. 659; *In re S. L. & A. R. R. Co.*, 133 N. Y. 277; *Davis* v. *S. L. R. R. Co.*, 47 Cal. 517; *S. M. W. Works* v. *Sharpstein*, 50 Cal. 284; Randolph on Eminent Domain, §§ 229, 231; *In re P. B. Co.*, 108 N. Y. 490.) Chapter 752 of the Laws of 1894 is unconstitutional and void, because it violates article 3, section 1 of the then Constitution of the state of New York, which provided that "the legislative power of this state shall be vested in a senate and assembly." The Rapid Transit Act of 1894 takes away from the legislature its constitutional power of legislation, and attempts to delegate it to a municipality. (*Barto* v. *Himrod*, 8 N. Y. 483.) Chapter 752 of the Laws of 1894 is unconstitutional and void, because it violates the provisions of section 2 of article 10 of the Constitution of 1846 in two respects: *First*, it usurps the right of local self-government; and, *second*, the legislature, instead of directing the mode of appointment of the rapid transit railroad commissioners, appoints them directly. (*People ex rel.* v. *Albertson*, 55 N. Y. 55; *State ex rel.* v. *Denny*, 24 Am. & Eng. Corp. Cas. 165; *State ex rel.* v. *Kennon*, 7 Ohio St. 560.)

*Edward M. Shepard* and *Albert B. Boardman* for respondents. The construction of a rapid transit road under the statute would be for a city use and purpose. (*People ex rel.* v. *Civil Service Boards*, 41 Hun, 287; 103 N. Y. 657; *People ex rel.* v. *Andrews*, 104 N. Y. 570; *Mayor* v. *T. Nat. Bank*, 111 N. Y. 454; *Bailey* v. *Mayor, etc.*, 3 Hill, 538; 2 Den. 433; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; *In re Mayor, etc., of N. Y.*, 99 N. Y. 569; *People* v. *Kerr*, 27 N. Y. 188; *People ex rel.* v. *Flagg*, 46 N. Y. 401; Dillon on Mun. Corp. § 75; *Pumphrey* v. *Baltimore*, 47 Md. 145;

*People ex rel.* v. *Batchellor*, 53 N. Y. 128.)   The Rapid
Transit Act does not violate the provision of section 10 of arti-
cle 8 of the Constitution that "no county, city, town or village
shall hereafter give any money or property, or loan its money
or credit to or in aid of any individual, association or corpora-
tion, or become directly or indirectly the owner of stock or
bonds of any individual, association or corporation." (*Tocci*
v. *Mayor, etc.*, 73 Hun, 46; *Starin* v. *Edson*, 112 N. Y. 206;
*People ex rel.* v. *Bd. of Assess.*, 111 N. Y. 505; *Walker* v.
*City of Cincinnati*, 21 Ohio St. 14; *Taylor* v. *Ross Co.*, 23
Ohio St. 76; *Wyscaver* v. *Atkinson*, 37 Ohio St. 81; *Pleas-
ant Township* v. *Æ. L. Ins. Co.*, 138 U. S. 67; *Wheeler* v.
*City of Philadelphia*, 77 Penn. St. 353; *Packet Co.* v.
*Keokuk*, 95 U. S. 80; *Presser* v. *Illinois*, 116 U. S. 252;
*People ex rel.* v. *Bull*, 46 N. Y. 57; Cooley's Const. Lim.
177–181.)   What is a city use or a public use is a question for
determination by the law-making power.   Unless the law-
makers clearly transcend their constitutional warrant, their
judgment must prevail.   (Cooley's Const. Lim. [5th ed.] 218;
*In re N. Y. El. R. R. Co.*, 70 N. Y. 327; *In re G. El. R.
Co.*, 70 N. Y. 361; *People ex rel.* v. *Albertson*, 55 N. Y. 55.)
The Rapid Transit Act does not violate the constitutional pro-
vision (§ 18, art. 3) that the legislature shall not pass a private
or local bill granting to a corporation, association or individual
the right to lay down railroad tracks.   (*In re R. T. Comrs.*,
147 N. Y. 260; *In re E. R. B. Co.*, 75 Hun, 119; *In re
Church*, 92 N. Y. 1; *People ex rel.* v. *Squire*, 107 N. Y. 593;
*Ferguson* v. *Ross*, 126 N. Y. 459; *People ex rel. Briggs*, 50
N. Y. 559.)   The theory that the classification of cities by
section 2 of article 12 of the Constitution of 1894 changed the
rule as to what is a general and what a local bill; and that the
mandatory act of 1895 must, under the new Constitution, be
deemed to be a local or private bill granting the right to lay
railroad tracks, is untenable.   (*In re N. Y. El. R. R. Co.*, 70
N. Y. 327; *In re G. El. R. Co.*, 70 N. Y. 361; *In re P. P.
& C. I. R. R. Co.*, 67 N. Y. 371; *People* v. *L. I. R. R. Co.*, 9
Abb. [N. C.] 181–202; *State* v. *Toledo*, 48 Ohio St. 112;

Cooley's Const. Lim. [5th ed.] 75; Sutherland on Stat. Const. § 206; *Town of Cherry Creek* v. *Becker*, 123 N. Y. 161; *People ex rel.* v. *Gardner*, 59 Barb. 198.) The appointment of the rapid transit commissioners by the legislature is not in violation of section 2 of article 10 of the Constitution. (*People ex rel.* v. *Draper*, 15 N. Y. 532; *People* v. *Pinckney*, 32 N. Y. 377; *People ex rel.* v. *Palmer*, 52 N. Y. 83; *N. Y. Fire Department* v. *A. S. S. Co.*, 106 N. Y. 566; *Astor* v. *Mayor, etc.*, 62 N. Y. 567; *Sturgis* v. *Spofford*, 45 N. Y. 446.) The reference of the question of municipal construction to the vote of the electors of the city is not in violation of section 1 of article 3 of the Constitution. (*Bank of R.* v. *Vil. of Rome*, 18 N. Y. 38; *Starin* v. *Town of Genoa*, 23 N. Y. 439; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; *Clarke* v. *City of Rochester*, 28 N. Y. 605; *People* v. *Fire Association of P.*, 92 N. Y. 311; *People* v. *L. I. R. R. Co.*, 134 N. Y. 506; Dillon on Mun. Corp. § 44; Cooley's Const. Lim. [6th ed.] 141, 142.)

HAIGHT, J. This action was brought to restrain the rapid transit commissioners, the mayor, aldermen and commonalty and other officers of the city of New York from incurring any debt or obligation of the city, under the Laws of 1891, chapter 4, as amended by the Laws of 1892, chapters 102 and 556; Laws of 1894, chapters 528 and 752, and the Laws of 1895, chapter 519, commonly known as the Rapid Transit Acts.

The acts, in brief, create a rapid transit commission and provide that the commissioners shall, in case they deem it necessary and upon the written request of the local authorities, proceed to locate a route and provide the plans and specifications for a railway through the city. That, after they shall have so located the route and provided the plans upon which the railway should be built, they may sell at public auction the right, privilege and franchise to construct, maintain and operate such railway; or, if the people shall determine by vote of a majority of the electors that such railway shall be constructed for and at the expense of

the city, then the commissioners shall enter into a contract with any person, firm or corporation best qualified in their opinion to fulfill and carry out the contract, for the construction of such road upon the route, and in accordance with the plans and specifications adopted. In case the road shall be built at the expense of the municipality, the officers of the city, upon requisition of the commissioners, are required to issue the bonds of the city, to the amount of $55,000,000, payable in gold, with interest not to exceed three and one-half per cent, free from taxes, with which to pay for such construction. It is further provided that the commissioners may also enter into a contract with the contractors for the building of the road, for the lease and operation of the same for a period not less than thirty-five years, nor more than fifty years, at a rental agreed upon, to be not less than the interest on the sum paid by the city for the construction, and one per cent in addition, and that the same may be renewed from time to time, as the lease shall expire, upon such terms as shall be agreed upon ; that in case of default in paying the annual rental provided for, or in case of the failure or neglect on the part of the contractors to faithfully observe and fulfill the requirements of the contract, the city, by its rapid transit commissioners, may take possession of the road and equipments, and as the agents of the contractors, either maintain and operate the road at their expense, and upon their liability, or enter into a new contract with other persons for its operation. The acts also provide that in case the road shall be constructed by the municipality, it shall be and remain the absolute property of the city, and shall be deemed to be a part of the public streets and highways of the city, to be used and enjoyed by the public, upon the payment of such fares and tolls, and subject to such reasonable rules and regulations, as may be imposed and provided by the board of rapid transit commissioners.

Pursuant to the provisions of these acts, the commissioners entered upon their duties, and upon the request of the authorities of the city of New York located a railroad to be built under the streets through the main portions of the city, and then tried

to induce private capitalists to undertake its construction. Failing in this, they submitted to the voters of the city the question as to whether the road should be constructed at the expense of the city, and a considerable majority thereof answered in the affirmative.

It is claimed that these acts are violative of the Constitution; that they are pernicious, wantonly extravagant and dangerous; that they tend to foster socialism and paternalism, and are a departure from our principles of government which has never before found favor. Upon this review we can only deal with the constitutional questions presented, but it will at once be seen that they are of grave importance, far-reaching in consequences, and not free from difficulty. We have given to their consideration careful study and serious reflection, hoping to reach a result that will afford necessary relief to the people of the city, and at the same time preserve the general policy of our system of government.

The Constitution (Article VIII, § 10), among other things, provides that, " Nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes." Is the building of the proposed railroad a " city purpose " within the meaning of this provision? We are aware that the expenditures of our city governments have become enormous, and that appropriations have been made for a great variety of purposes, many of which may be open to criticism, and that a complete definition of " a city purpose " may not be possible, in view of the fact that reasons may arise which we are unable to foresee or now consider. The authorities, in so far as they have spoken upon the subject, have only attempted a definition as to certain specified purposes. (*People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475, 487; *In the Matter of the Mayor, etc.*, 99 N. Y. 569, 585; *In the Matter of the Niagara Falls & Whirlpool R. Co.*, 108 N. Y. 375; *Hequembourg* v. *City of Dunkirk*, 49 Hun, 550.) We shall not now attempt a definition, except in general terms, further than is necessary to determine the meaning of the acts which we have under review. Generally, we

think, the purpose must be necessary for the common good and general welfare of the people of the municipality, sanctioned by its citizens, public in character and authorized by the legislature. Common highways have always been regarded as under the special care, supervision and control of municipal governments, upon which devolves the duty of keeping them in suitable repair as well as the duty of providing sufficient ways to satisfy the requirements and answer the convenience of the public. Highways are not only necessary for the welfare and convenience of the people, but are required by them. They are public in character and authorized by the legislature. Under the civil law they belonged to the king; under the common law the king and his subjects have a right of passage over them, whilst the owner of the abutting land may possess the fee and the easements of light, air and access. In this state the common law is in force, but the sovereign power rests in the people. Highways have existed from earliest times. They were constructed for the passage of persons and the carriage of goods. They may consist of a path through a wilderness, a pass over a mountain or a broad street in a populous city. Formerly the chief transportation of freight and passengers on land was made with teams of animals. This necessitated improved ways, such as turnpikes and plank roads. In recent years railroads have been constructed and come into general use, so that now a very large percentage of the transportation of the country is done upon these roads. This is evident from the fact that, in the year 1893, 465,000,000 persons were transported over the railroads in the city of New York. These roads in this city are operated upon the streets; some are elevated, others are surface roads. They are all owned by individuals or corporations, but their service is public. They are not common highways in the sense that they are under the care and management of the municipality, but as to their purpose, which is the transportation of persons and property for the public, they are as distinctly highways as the ordinary street. It is true that a uniform fee is charged for persons taking passage

34

over them, but this does not differentiate them from other highways; tolls were charged on turnpikes and plank roads, and yet they were public highways; nor does the fact that the road is occupied by rails in such a manner as to prohibit its use by teams and persons traveling on foot distinguish it from others, for highways are often constructed for different uses.   There are ways for pedestrians, others for teams and vehicles, and still others for equestrians.   If a highway may be constructed for these different uses, why may it not be constructed with rails upon which the millions may travel?   In the case of the *Niagara Falls and Whirlpool Railway* (*supra*), Andrews, J., in delivering the opinion of the court, says :   " The ground upon which private property may be taken for railroad uses, without the consent of the owner, is primarily that railroads are highways furnishing means of communication between different points, promoting traffic and commerce, facilitating exchanges, in a word, they are improved ways.   In every form of government the duty of providing public ways is acknowledged to be a public duty." In Cooley's Constitutional Limitations (p. *533) it is said that " Every government is expected to make provision for the public ways, and for this purpose it may seize and appropriate lands.   And as the wants of traffic and travel require facilities beyond those afforded by the common highway, over which any one may pass with his own vehicles, the government may establish the higher grade of highways, upon some of which only its own vehicles can be allowed to run, while others, differently constructed, shall be open to use by all on payment of toll.   The common highway is kept in repair by assessments of labor and money ; the tolls paid upon turnpikes or the fares on railways are the equivalents to these assessments, and when these improved ways are required by law to be kept open for use by the public impartially, they also may properly be called highways, and the use to which land for their construction is put be denominated a public use."

In *People* v. *Kerr* (27 N. Y. 188, 194) the court says :

" The right of the public, that is of the people of the State, in a street or highway, is a right of passage. In the ordinary use of the highway, it is a right to pass and repass over its surface on foot or in carriages at pleasure.  *  *  *  If the legislature or municipal authorities, under their sanction, should construct such a track (referring to railroads) in a particular street or road, and while allowing all persons to use that track freely with vehicles adapted to it, should close the road to every other kind of travel or use, it would, nevertheless, continue to be a highway, and devoted to a public use. *  *  *  These structures are public ways and public uses of property, and those by whom they are constructed and who receive their emoluments whether corporations or individuals are *quasi* public agents."

In *Olcott* v. *Supervisors* (16 Wallace, 678, 694) it was stated by Mr. Justice STRONG in delivering the opinion of the court : " That railroads, though constructed by private corporations and owned by them, are public highways has been the doctrine of nearly all the courts ever since such conveniences for passage and transportation have had any existence.  *  *  * And the reason why the use has always been held a public one is that such a road is a highway, whether made by the government itself or by the agency of corporate bodies, or even by individuals when they obtain their power to construct it from legislative grant."

Is such a highway for " a city purpose ? "  We are aware that under another provision of the Constitution, which we shall consider later on, municipal governments are prohibited from loaning their credit to a railroad corporation, but this does not apply to a railroad constructed and owned by the city or affect the character of the use or the purpose for which it was constructed.  Common highways are clearly within the provisions of the Constitution for a " city purpose."  Railroads, as we have shown, are highways and constructed for the same purpose as the common highways.  They are necessary for the common welfare of the people, required for their use, public in character and authorized by the legislature, and when constructed

and owned by the city are for a "city purpose" within the meaning of the Constitution.

We have thus far considered the question independently of the provisions of the statute, which we deem conclusive upon the question. As we have seen, the statute provides that, if the road shall be constructed at the city's expense, the road or roads shall " be deemed to be a part of the public streets and highways of said city." Whilst the legislature cannot by an act create a city purpose out of that which is entirely foreign to a municipal government, it may, upon doubtful questions, give a legislative interpretation as to the meaning of words and phrases used in the provisions of the act which the courts are bound to respect. Here we have an express provision in aid of the authorities making the proposed road a part of the public streets and highways of the city, placing it upon the same footing, entitling it to the same consideration, and designing it for a " city purpose," with the same force and effect as if it was an ordinary public street.

The contention that such roads are highways, and as such may be for " a city purpose " within the meaning of the Constitution, is not in conflict with the prior subdivision of section ten of article eighth of the Constitution, which provides that : " No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation." This provision should be construed with reference to the evils it was intended to correct. It first found place in the Constitution in 1874. Prior to this, there had been upon the statute books that which was commonly known as the Town Bonding Act. Under it numerous railroads had been built upon the bonds procured from towns through which they were constructed in return for stock issued by the corporations. The inhabitants of the towns were induced to give their consent through supposed benefits that would result to their property and upon representations that the earnings of the road would provide dividends upon the

stock, with which they could pay their bonds. In some
instances the bonds were procured and sold and the roads
never built. In many other cases .the roads in a few years
were sold out under foreclosure of mortgages and the stock
cut off. So great was the evil and so heavy was the burden
upon the towns that relief was sought through a ·constitutional
provision. It was this evil that the provision in question was
intended to correct, and with this situation in view it should
be construed. There had been, at that time, no attempt on
the part of municipalities to construct and own railroads.
Such a project had not been publicly promulgated, discussed
or contemplated. The towns had subscribed for the stock in
private corporations and in most instances they had lost.
Hence, the provision that they should not give any money or
loan their credit to or in aid of any individual, association or
corporation, or become owners of stock or bonds of any such
individual, association or corporation. This was not intended,
nor does it prohibit municipalities from constructing their own
roads and paying therefor when necessary and authorized by
the legislature. In the case of *People ex rel. Murphy* v.
*Kelly* (76 N. Y. 475) a corporation had been organized for the
construction of a bridge over the East river between the cities
of New York and Brooklyn. The cities had each subscribed to
the capital stock of the company. After the bridge had been
partially constructed the amendment to the Constitution of
1874 went into effect, prohibiting the further loaning of credit
of municipalities to private corporations. The following year
an act was passed permitting the two cities to acquire the stock
of the corporation, and for its dissolution and the continuance of
the structure of the bridge by the cities as the owner. It was
held that. this was not in conflict with the amended provision
of the Constitution, and that the construction of the bridge
was for " a city purpose."

The acts in question, under a fair construction, do not
require the city to loan its credit to or in aid of any individ-
ual, association or corporation. It is provided that in case
the road shall be constructed by and at the city's expense,

then and in that event the road so constructed shall be and remain the absolute property of the city, so that whatever the municipality expends in the construction of the road is for the creation of its own property and is not in any sense a loan to an individual or corporation. It is said, however, that there is a provision for a lease of the road for a period not less than thirty-five nor more than fifty years and for successive renewals thereof; that a lease in perpetuity would be equivalent to ownership, and that the bonds issued by the city for construction would, in effect, be a loan of the credit of the city to the parties leasing the road; but such a construction would manifestly be violative of its spirit and intent. It would be in conflict with the express provision that the road should be and remain the absolute property of the city. It would not be in accord with the provision limiting the terms for which a lease may be made, and would not be in harmony with the provision requiring an appraisement or valuation of the property of the lessee employed in the equipment and operation of the road at the end of the lease in case it should not be renewed to the same individual, association or company. The provisions for a lease are not objectionable; they are rather in accord with our American form of government, which leaves trade and commerce to be carried on by individual industry and enterprise. The government has annually expended large sums in the construction of highways, in the digging of canals, in the building of harbors, and in the improving of the channels of rivers, for the purpose of aiding and promoting trade and commerce. Yet, its policy hitherto has been to leave the conduct of such business to individual enterprise. The city of New York is the owner of ferry rights, together with docks and piers which it has constructed upon its rivers. The docks and piers afford access to its water highways. These, with its ferry rights, it leases from time to time for specified terms. In that way it furnishes highways in which its inhabitants may engage in the transportation of persons and property, thus promoting the commerce of the city. Nothing more is author-

ized to be done with reference to the leasing of the proposed railroad. It would be used for the same purpose and promote and facilitate the travel of persons and the commerce of the city. Nor do we think that a lease in perpetuity is permissible under the provisions of the acts. If such was contemplated, why limit the terms and provide for renewal leases? The evident intention was that, at the expiration of each term for which the road had been leased, a new contract should be made for the re-leasing of the road upon such terms and conditions as to the board should *then* seem just, not upon such terms and conditions as shall be fixed at the time of entering into the original lease. That this construction was intended is made apparent from the clause of the statute which follows, providing a valuation of the equipment used in operation in case the parties should not agree for a renewal of the lease, so that at each recurring period for renewal, the situation of the municipality and of the operator of the road, may then be taken into consideration, and the renewal then made upon such terms as shall be just. This view of the statute gives point to the provision declaring the road to be the property of the city, and it dissipates the theory of ownership by the lessee by reason of a lease in perpetuity.

We do not understand that the views above expressed are in conflict with the Ohio cases. In that state the Constitution does not limit municipal expenditures to " a city purpose." We do not, however, wish to be understood as approving of those cases, especially in so far as they sustain the right of a city to construct a railroad mainly outside of its own territory and state. In the case of *Walker* v. *City of Cincinnati* (21 Ohio St. 14) it was held to be within the legitimate scope of legislative power to authorize a city to construct railroads or other public improvements in which the city had a special interest and to impose taxes upon its citizens for that purpose. The question presented for consideration in that case was as to the constitutionality of an act of the General Assembly of the state under which the city of Cincinnati proposed to construct a railroad from its city to the city of Chattanooga, in the state

of Tennessee. The Constitution provided that the General Assembly shall never authorize any county, city, town or township, by vote of its citizens or otherwise, to become a stockholder in any joint stock company, corporation or association whatever, or to raise money or loan its credit to or in aid of any such company, corporation or association. It was held that the act was not violative of the Constitution. In the case of *Taylor* v. *Commissioners of Ross County* (23 Ohio St. 22) the question raised was as to the constitutionality of an act which authorized a town to construct a railroad and to levy taxes on the taxable property of the town for the purpose of building so much of the road in the town as could be built for the amount so raised, and for the issuing of bonds to complete the same, the road to be connected with another to be constructed through an adjoining town. It was held that the act was an attempt to evade the provisions of the Constitution and that it was in conflict therewith and, therefore, void. And to the same effect are the cases of *Wyscaver* v. *Atkinson* (37 Ohio St. 80) and *Counterman* v. *Dublin Township* (38 Ohio St. 515).

We might have some difficulty in sustaining the Rapid Transit Law, if its constitutionality depended upon its being general instead of local. It is provided that the legislature shall not pass a private or local bill granting to any corporation, association or individual the right to lay down railroad tracks (Const. art. III, § 18), but we are of the opinion that the corporation, association or individual here referred to has no application or reference to a municipality, and that a county, city, town or village is not included within its provisions.

There are numerous other provisions which it is claimed are in conflict with other provisions of the Constitution. But these questions have been sufficiently discussed in the courts below.

Our government was established by the people for their own protection and welfare. Their policy was to foster and protect individual industry and enterprise. To such policy we owe our advancement as a nation, and to such we must

look for our future prosperity. The Constitution should be construed with reference to this general policy, and, ordinarily, railroads should be constructed and operated by private capital. The situation, however, in the city of New York is most peculiar. A long, narrow island lies between two rivers, so narrow in places that there are practically but two or three streets through which the masses must reach its business center. The population of the city during the last half century has increased from three hundred thousand to over a million and a half of people. The travel upon its existing railroads during the last twenty years has increased from 150,000,000 in 1874 to upwards of 448,000,000 in 1894. It was conceded upon the argument that the crowded and congested condition of the travel upon the streets in the city renders the proposed structure necessary. These considerations have induced us to give to the provisions of the act a most liberal construction. The commissioners located the road and tried to induce private capital to construct and operate it. In this they have failed, and the situation is such that the city must itself construct the road or go without it. Here we have a demand for a great public highway, which private enterprise and capital will not construct. It is necessary for the welfare of the people and is required by them. It is public in character and is authorized by the legislature.

Our conclusion is that, under the circumstances and situation here presented, the proposed road may properly be held to be "for a city purpose," and that the acts are not in contravention of the provisions of the Constitution.

The judgment should be affirmed, with costs.


O'BRIEN, J. (dissenting). I cannot concur in the judgment in this case. It opens the door for a revival of all the abuses that grew out of the exercise by municipalities of the power to issue bonds and to use their credit and funds for the construction of railroads. The provisions of the Constitution restricting such power were the result of long and disastrous experience as to the wisdom of permitting the taxing power

to be exercised in cities and towns for such purposes.  It was plainly the intention of the constitutional amendment to suppress the evil by a radical destruction of the power from which it emanated.  The power then resided in the legislature, and by its constant exercise towns and cities were empowered to issue bonds and to contract debts in aid of railroads, always under the pressure of some real or supposed necessity. There never was much difficulty in obtaining the consent of a majority of the taxpayers in writing, and in the most formal manner.  They were stimulated by the prospects of gain to their property, or advantage of some kind to themselves. But, in the end, both the approving majority and the protesting minority found themselves loaded with debt, in many cases without any railroad having been constructed, and, in most cases, without the benefits to their property that had been anticipated.  The framers of the constitutional amendment, and the people adopting it by their votes, plainly intended to strike at the root of the evil.  The language that they inserted in the Constitution for that purpose is broad and comprehensive, and should be construed by the courts in the spirit in which it was framed, and with reference to the public policy in view.

"No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."  (Const. art. 8, § 10.)

If I understand the prevailing opinion, this court is now to sanction the principle that, notwithstanding these restrictions, a city may still issue its bonds for the purpose of constructing a railroad within its limits, and may then lease the road for a period of years, or in perpetuity, to a private corporation upon such terms as the legislature may prescribe.  If this can be done in one city or county, of course it may be done in every other city, town or county, since the Constitution does not in

this respect make any discrimination. The circumstance that the municipality using its funds or credit for such a purpose retains the nominal title to the road is supposed in some way to obviate the objection. I am unable to see how it does. The lessee in perpetuity would be substantially the owner. If the legislature has the power to authorize such a lease to a private corporation for a rental equal to the interest on the bonds issued for construction, it may authorize a lease for much less, or for a nominal rental, and if it may authorize a lease for fifty years, it may also authorize a lease in perpetuity. If this be the true interpretation of the Constitution, then practically nothing has been accomplished by the restrictions upon the power of cities and towns to issue bonds, or use their credit in aid of the construction of railroads. The decision in this case suggests a method by which they may do it still. I cannot believe that the limitations of the Constitution were intended to have only such a narrow and feeble operation. It is broad enough in its letter and spirit to condemn the legislation now under consideration. Much more might be said against the power of the legislature to pass the series of statutes involved in this case, but an extended discussion would subserve no useful purpose.

It seems to me that the decision practically nullifies the constitutional restrictions and defeats the purpose that was plainly in view in their enactment by the people. It is true that the act in question provides for a fifty-year lease only, but if the matter is within the power of the legislature at all it may make the period as long as, in its judgment, may be proper, or in perpetuity.

Andrews, Ch. J., Gray, Bartlett and Martin, JJ., concur with Haight, J., for affirmance; Vann, J., concurs with O'Brien, J., for reversal.

Judgment affirmed.