(No. 17212.—Reversed and remanded.)
FRANK P. MURPHY, Plaintiff in Error, *vs.* WILLIAM E. DEVER, Mayor, *et al.* Defendants in Error.

*Opinion filed February 18, 1926.*

MUNICIPAL CORPORATIONS—*when city cannot aid railroad company to comply with ordinance for track elevation.* Where it is admitted that a railroad company is financially unable to comply with an ordinance of the city of Chicago requiring it to elevate its tracks, an ordinance providing that the city shall bear the cost of the work in the first instance, the funds to be provided by the issuance of bonds by the city and bonds of the company to be deposited with the city as security, contemplates a loan to the railroad company, in direct violation of the constitution, and the ordinance is void, notwithstanding the elimination of grade crossings is a proper exercise of the police power.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

LEESMAN & ROEMER, for plaintiff in error.

FRANCIS X. BUSCH, Corporation Counsel, (LEON HORNSTEIN, of counsel,) for defendants in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This tax-payer's suit questions the authority of the city of Chicago to issue bonds to provide funds to the amount of $1,500,000 to be expended for the purpose of eliminating grade crossings by the elevation of certain tracks of the Chicago, Milwaukee and St. Paul Railway Company, as provided in an ordinance passed by the city council December 29, 1913. Because of financial difficulties the railway company was unable to comply with the ordinance. January 30, 1925, an ordinance was adopted which recites the passage of the ordinance of 1913 and the acceptance of it by the railway company, the default of the railway company, the demand of the city that the work of eliminating the grade crossings by elevating the tracks be performed, and the right of the city under the ordinance of 1913, upon the default of the railway company, to cause the work to be done and to charge the expense of the completion of the work to the railway company. The ordinance of 1925 then provides that it is agreed between the city and the railway company that all the work of track elevation shall be done under the supervision of the commissioner of public works of the city, and that the cost of the same shall be borne in the first instance by the city, the funds to be provided by the issuance of bonds of the city in the amount of $1,500,000; that if the cost of the improvement exceeds the sum realized from the sale of the bonds the excess shall be borne by the railway company independent of the covenants of the agreement; that the railway company shall reimburse the city by re-paying the total amount expended by the city in eighteen annual installments, beginning January 1, 1928, and that these install-

ments shall constitute a sinking fund for the payment of the bonds; that as security to the city the company shall deliver to the comptroller of the city bonds of the company, maturing not less than twenty years from the date of the contract, in an amount of not less than $1,500,000. On the same day there was passed another ordinance, which provides that for the purpose of paying the cost of the elevation of the tracks of the Chicago, Milwaukee and St. Paul Railway Company, as required by the ordinance of 1913, 1500 improvement bonds of $1000 each are authorized to be issued, each to be dated July 1, 1925, stated amounts of principal to be paid on the first day of January in each of the years 1928 to 1945, inclusive. The bill of complaint filed in the superior court of Cook county October 28, 1925, by plaintiff in error, recites the facts related, and alleges that the ordinances of January 30, 1925, contravene that provision of the constitution of 1870 submitted as a separate section, which provides, "no county, city, town, township or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation," and are therefore void. His bill concludes with a prayer for a decree restraining defendants in error, the city of Chicago and its officers, from issuing the bonds authorized by the ordinance and from levying a tax for the payment of the principal of or the interest on said bonds. A general demurrer to the bill was sustained, and the bill was dismissed for want of equity. The case is brought here by writ of error.

The prohibition in the constitution is clear and specific. The significance of the inhibition is found in the evil which it was intended to remedy. The demand for improved transportation facilities had developed a mania for extending public aid to private corporations. In order to aid in the construction of railroads, municipalities were subscribing for stock, issuing negotiable bonds as a means of pay-

ing the subscriptions, and taxing the inhabitants or the property within their limits to pay the indebtedness thereby incurred. While in specific cases it might be successfully contended that the public good will be served if the city can aid in the extension or improvement of transportation facilities, the poisonous by-products of such partnership arrangements have in the past far outweighed the temporary benefits. In the case at bar we have a railway company maintaining tracks within the limits of the city of Chicago and without funds to elevate its tracks, as required by city ordinance. In order to provide the railway company with funds the city proposes to borrow $1,500,000 and do the work for the railway company under an agreement that the latter will provide the funds to pay the bonds as they become due or reimburse the city if it is required to pay the bonds. To secure this loan of the city's credit the railway company deposited certain of its bonds. If the bonds to be deposited by the railway company with the city as security are worth their face value then the company could market them and thereby secure the funds with which to elevate its tracks, as required by the ordinance. The allegations of the bill admitted by the demurrer are that the railway company was unable to provide the funds with which to make the elevation, and for that reason it became necessary, if the improvement was to be made, for the city to advance the funds. Such an arrangement is in direct violation of the constitutional provision. Whatever form the transaction takes, it is a loan by the city to the railway company of the amount of money needed for the improvement. The company becomes indebted to the city for the money which the latter spends on the company's property. The fact that the company deposits securities to secure the amount advanced by the city emphasizes the fact that the transaction is a loan, in which the city has lent its money and its credit to the railway company. This is exactly what the people of this State have said by their constitution shall not be done.

The justification sought to be made for the city's action is that the protection of the lives of the people of Chicago by the elimination of grade crossings is a proper exercise of the police power. Conceding this, the city is not justified in lending its credit to a railroad corporation in violation of the constitution. It is necessary and proper for a city to keep its streets open and in good repair, and the city may often make a street improvement and recover the cost of the same from an individual or corporation who should have made it in the first instance. In this case the street is always the city's street, and the improvement, when completed, is an addition to the city's property. The expenditure of public funds in such a case is quite different from their expenditure in the improvement of a railroad property, which is the private property of a railroad corporation before the improvement and will continue to be its private property after the improvement.

Our conclusion is in harmony with that reached by other courts in the consideration of cases almost identical with this. (*City of Cincinnati* v. *Harth,* 101 Ohio St. 344, 128 N. E. 263; *Lord* v. *City of Denver,* 58 Colo. 1, L. R. A. (1915B) 306; *Pleasant Township* v. *Ætna Life Ins. Co.* 138 U. S. 67, 11 Sup. Ct. 215.) In *Sun Printing and Publishing Ass'n* v. *Mayor of New York,* 152 N. Y. 257, 37 L. R. A. 788, it was held a provision for the lease of a railroad, and for successive renewals thereof, in a statute giving a municipality power to build a railroad in its streets, does not make bonds issued in aid of the construction of such railroad a loan of the credit of the city to the persons leasing the railroad, the ground of the decision being that the statute provided that the road should be and remain the absolute property of the city.

The decree is reversed and the cause is remanded to the superior court of Cook county, with directions to overrule the demurrer.    *Reversed and remanded, with directions.*