(No. 28913.—)

THE PEOPLE *ex rel.* John W. Curren, Jr., State's Attorney, Appellant, *vs.* HARLINGTON WOOD, County Judge, *et al.,* Appellees.

*Opinion filed September 19, 1945.*

JOHN W. CURREN, JR., State's Attorney, and THOMAS W. HOOPES, both of Springfield, for appellant.

GILLESPIE, BURKE & GILLESPIE, (HUGH J. DOBBS, and LAWRENCE HOFF, of counsel,) all of Springfield, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on appeal to review the judgment of the circuit court of Sangamon county quashing a writ of *certiorari* through which it was sought to review the action of the county judge of that county taken in accordance with the provisions of an act entitled: "An act in relation to airport authorities." The attack upon the order of the county judge is based upon the alleged invalidity of the

act. This act was passed by the Sixty-fourth General Assembly. It contained an emergency clause and was approved by the Governor on April 4, 1945. In many of its basic particulars it is similar to an act entitled: "An Act in relation to municipal airport authorities," adopted by the Sixty-third General Assembly, and held invalid in *People ex rel. Greening* v. *Bartholf,* 388 Ill. 445.

The act before us provides for the creation of an airport authority by a vote of the majority of electors voting on such proposition in the territory proposed to be incorporated. It provides that it shall be governed by a board of commissioners, delineates its purposes and defines the powers of an airport authority. Section 13 authorizes the making of appropriations and the levy of taxes. The act also provides for the issuance of bonds, to be paid only from operating revenues. The act provides for elimination of overlapping airport functions by such authority and a pre-existing public agency; provides for dissolution of the authority and for disconnection of territory, and lays down certain rules of construction to be applied in interpreting the act. In many respects it is similar to the provisions of the 1943 act. That act was found invalid in the *Bartholf case* for reasons set forth in the opinion in that case as applied to certain provisions of that act.

The present act, by section 7, declares a public interest in "safe, adequate and necessary public airports and public airport facilities," and declares the powers, corporate purposes and functions of the airport authority to be "public and governmental in nature and essential to the public interest." Section 8 of the act declares the authority shall constitute a municipal corporation and body politic and shall have and exercise certain enumerated express governmental powers, including the establishment, maintenance and operation of a public airport, the acquisition of land for the location of such public airport and airport facilities.

Certain sections of the act implement and limit the general powers referred to in sections 7 and 8.

Many of the questions raised here were decided in the *Bartholf case,* where it was held that the act then under consideration was intended to confer upon an airport authority, as a municipality acting as an agency of the State government, "the power to provide safe and adequate airports to better regulate the aerial traffic in the locality where the airport is to be located. Such an airport, when established, would belong to the public and the public would have access to it, subject to reasonable rules and regulations that might be necessary for its proper management and operation. Power exercised in such a regulation may be likened to the power which a State in its sovereign capacity exercises in the control of transportation generally within the state." It is also in that case said: "We conclude that the basic purpose of the act was to make for safety in aviation and that legislation enacted for such purpose is in the interest of the public welfare and a proper exercise of the police power, and is therefore a matter of public concern." In the opinion in the *Bartholf case* there is a review of legislation on this subject which it is not necessary to repeat here. What is there said also concerning the police power of the State and the authority of the General Assembly to delegate such power to municipalities created by it is adhered to and it is not necessary to reiterate. It was held in that opinion that a public airport authority is created for a public and not a private purpose.

The bases of the contentions of appellant are as follows: The act is a violation of the due-process clauses in that it authorizes the levy of a tax for a purpose which is only a private or proprietary, rather than a governmental, purpose; that even though it be said that the operation of an airport is within the police power, yet neither the State nor any municipality created by it can engage in a busi-

ness or enterprise and levy taxes for its operation under the guise of regulating it; that the operation of an airport is not the exercise of police power, though its regulation may be, and police power authorizes regulation but not operation, and the General Assembly cannot, by providing for operation under the police power as a governmental function, make such operation a governmental function. It is further argued that the act violates separate section 2 of the Illinois constitution in that it extends the credit of an Illinois municipal corporation to and for the use of a private corporation. It is also objected that the classifications made in the act are not reasonable; that while basis by population has a reasonable relation to local self-government it does not bear such relation to the operation of an airport.

We do not deem it necessary to repeat the decision of the *Bartholf case* regarding the authority or power vested in corporate authorities of municipalities to assess and collect taxes. That question was raised and considered in the *Bartholf case* and the court's disposition of it is here adhered to. The former act was found invalid because, among other reasons, a municipal sponsor was provided for, with power to fix conditions of its sponsorship prior to the organization of the authority. The present act has no provisions for sponsorship. Other differences will be hereinafter pointed out.

It is not contended by appellees that if the operation of an airport under the act authorizing the existence of an airport authority is a private business or for a proprietary purpose only, the act can be sustained, but it is contended that the present airport authority act providing for acquisition, operation and control of a public airport partakes of the State's sovereignty which is delegated to the authority as a municipal corporation and that such powers are public and governmental. This is the pivotal question in the case.

We start, in the consideration of this case, with the well-settled doctrine that the General Assembly may create municipalities of various kinds, and delegate to them the sovereign power of the State to govern and to tax. (*Reif v. Barrett,* 355 Ill. 104; *People ex rel. Pearsall* v. *Chicago, Milwaukee and St. Paul Railway Co.* 319 Ill. 415.) The question before us is whether the airport authority created by this act comes within this legislative power. The power of the General Assembly to create municipal corporations is practically unlimited. It may create any conceivable kind of a corporation it sees fit for the more efficient administration of public affairs and endow such corporation and its officers with such powers and functions as it deems necessary and proper for the administration of such corporate powers and affairs. (*Perkins* v. *Comrs. of Cook County,* 271 Ill. 449; *People ex rel. Wies* v. *Bowman,* 247 Ill. 276.) For this purpose it may provide for the organization of corporations which embrace territory situated wholly within or partly within and partly without the boundaries of another municipal corporation. As said in *People ex rel. Scheuber* v. *Nibbe,* 150 Ill. 269; "It cannot be doubted that the Legislature has the power to authorize the organization of municipal corporations for one purpose, embracing territory situated wholly or partly within the boundaries of another municipal corporation already organized for another purpose." In *People* v. *Bowman,* 247 Ill. 276, it is said: "While two municipal corporations cannot have jurisdiction and control, at one time, of the same territory for the same purpose, no constitutional objection exists to the power of the legislature to authorize the formation of two municipal corporations in the same territory at the same time for different purposes, and to authorize them to co-operate so far as co-operation may be consistent with or desirable, for the accomplishment of their respective purposes." In creating municipal corporations the legislature must necessarily provide the officers

by and through whom their corporate powers and functions are to be performed. In the matter of creating such offices and providing for filling them the legislative power is supreme.

The power to operate an airport is vested in the airport authority on the theory that such operation is necessary for public safety in aviation. There is in principle no essential difference, so far as the public interest and the public safety are concerned, between the operation of a public airport and that of a highway, subway, wharf, public park, and the like. Such airports have been characterized as the "highways of the air."

The fact that private airports may and do exist does not prevent operation and supervision of a public airport, any more than the ownership and operation of a private road, prevents operation, supervision and control of the public highways of the State.

While the question as to the constitutional validity of acts such as the one before us is comparatively new in this country, it has been passed upon by a number of courts in States having constitutional restrictions the same as or similar to ours. The unanimous holding has been that such purpose is public and governmental in nature. It is not to be doubted that, as argued by appellant, to sustain the authorization of the power to levy taxes the purpose of a municipality created by the General Assembly must be governmental. The municipality must be such as partakes of some of the sovereignty of the State. In the cases in which the question has been presented, to courts in other States, the contention that such municipalities are public and governmental in purpose has been sustained. *Hesse* v. *Rath,* 249 N. Y. 436, 164 N. E. 342; *Dysart* v. *City of St. Louis,* 321 Mo. 514, 11 S. W. 2d. 1045; *Erickson* v. *King,* 218 Minn. 98, 15 N. W. 2d 201; *Milheim* v. *Moffat Tunnel Improvement Dist.* 262 U. S. 710, 67 L. ed. 1194; *Wichita* v. *Clapp,* 125 Kans. 100, 263 Pac. 12; '

*McClintock* v. *City of Roseburg*, 127 Ore. 698, 273 Pac. 331; *Monterey Peninsula Airport Dist.* v. *Mason*, 19 Cal. 2d 446, 121 Pac. 2d 727; *Prince* v. *Cocker*, 166 Mass. 347, 44 N. E. 466; *Sun Printing and Publishing Ass'n* v. *Mayor of New York*, 152 N. Y. 257, 46 N. E. 499.

Counsel for appellants urge, however, that, even if the purpose of the act is to be considered public and governmental, and, as such, of interest to all the people of the State, yet the act is invalid in that it requires that the property of the district, only, be taxed for the support and maintenance of an airport. In *Milheim* v. *Moffat Tunnel Improvement Dist.* 262 U. S. 710, 67 L. ed. 1194, the act under attack created a tunnel improvement district, to provide an avenue of communication by a transportation tunnel through the Continental Divide, to reduce the barrier to commercial intercourse between the eastern and western portions of the State, to facilitate communication in all seasons and promote the health, comfort, safety, convenience and welfare of the people of the State. It provided that it should be used for standard guage railroads, telephone and telegraph lines, transmission of power, water, and automobiles or other vehicles. It authorized the commission to issue bonds to pay for the cost of the tunnel, to lease the use of it, and to levy special assessments upon all real estate within the district as defined by the act, for the purposes provided in the act. It was urged that the act violated the fourteenth amendment of the United States constitution on the following grounds: (1) That the purpose of the act was not public in the sense warranting the exercise of power of taxation but was essentially private. (2) The act authorized the imposition of the entire taxes upon the land within the district without regard or relation to the tunnel or to the benefit to be derived from it, and in fact there was no benefit to such land justifying taxation. The Supreme Court of the United States held that whether the nature of use was essentially public or

private was ultimately a judicial question, yet the judgments of the State courts upon what is deemed public uses in any State, as well as declarations of the legislative body of the State, should always be kept in view, and, as the legislature of Colorado had declared the construction of the tunnel to be a benefit to the people of the State and had held it to be for a public purpose, such should be regarded in determining whether it was an agency authorized to levy taxes. The construction of the tunnel was likened to subway tunnels constructed by municipalities for lease to street railway and rapid transit lines for use as common carriers, and the court held the tunnel in that case to be a public improvement for public purposes "for which the power of taxation may be exercised."

In *Sun Printing and Publishing Ass'n* v. *Mayor of New York,* 152 N. Y. 251, 46 N. E. 499, the action was to restrain the rapid transit commissioners, the mayor and other officers of the city of New York, from incurring any debt or obligation of the city under laws commonly known as the Rapid Transit Acts, which created a rapid transit commission and conferred upon it certain powers, among which was the authorization, upon vote of the people, to issue bonds. It was there held that the purposes were necessary for the common good and general welfare of the people of the municipality and sanctioned by its citizens, and that the purposes were public in character. It was there said: "In every form of government the duty of providing public ways is acknowledged to be a public duty."

In *Hesse* v. *Rath,* 249 N. Y. 435, 164 N. E. 342, a statute of New York authorized the cities of the State to establish, construct, equip, maintain and operate airports or landing fields for aeroplanes and other aircraft. The city of Utica, acting under that statute, contracted to buy 295 acres to be used as an airport and authorized its officers to issue its corporate bonds in the sum of $120,000

to pay the purchase price. The constitution of New York provides that no city shall be allowed to incur any indebtedness except for city purposes. Plaintiff argued that acquisition of an airport or landing field is not a city purpose even if a public one, and that the bonds, if issued, were void. The court· of appeals held, in sustaining the act, that the purpose to be served is both public and municipal, saying: "A city acts for city purposes when it builds a dock or a bridge or a street or a subway. (*Sun Printing and Publishing Ass'n* v. *Mayor of New York*, 152 N. Y. 251, 46 N. E. 499.) Its purpose is not different when it builds an airport. (*Wichita* v. *Clapp*, 125 Kans. 106, 263 Pac. 12.) Aviation is today an established method of transportation. The future, even the near future, will make it still more general."

Cooley, in his Constitutional Limitations, 8th ed., vol. 2, p. 1132, said: "Every government is expected to make provision for the public ways, and for this purpose it may seize and appropriate lands. And as the wants of traffic and travel require facilities beyond those afforded by the common highway, over which anyone may pass with his own vehicles, the government may establish the higher grade of highways, upon some of which only its own vehicles can be allowed to run, while others, differently constructed, shall be open to use by all on payment of toll."

*Prince* v. *Crocker*, 166 Mass. 347, 44 N. E. 466, arose by a bill to restrain the construction of a subway under the streets of Boston. It was contended that taxation can be only for a public use; that the term "public use" in reference to taxation has a more restricted meaning than when applied to the taking of land by eminent domain, and that the city had no power to tax for such subway. It was argued that the subway would not be a highway open and free to be used by the public for driving or walking, but the statute authorized the transit commission virtually to grant a lease of it to any street railway company for fifty

years; and that the use of the subway which was contemplated was not a public use. In overruling that contention the court said: "That the legislature can authorize a city or town to tax its inhabitants only for public purposes is well settled and familiar. * * * But railroads are always held to be built for public use, whether the right to take land or the right to grant pecuniary aid to them is considered. * * * The building of the subway for the carriage of such passengers as pay the regular fare is therefore for a public use, and it is within the constitutional power of the legislature to order or sanction taxation for it."

The establishment and maintenance of public airports are the sole corporate purposes of the airport authority provided for in this act, and as they are for the public health, safety and convenience, and for the public welfare, they are qualified purposes within the meaning of sections 9 and 10 of article IX of the constitution. *Robbins* v. *Kadyk,* 312 Ill. 290; *Perkins* v. *Comrs. of Cook County,* 271 Ill. 449; *Wetherell* v. *Devine,* 116 Ill. 631.

Appellant also argues that this act violates separate section 2 of the State constitution in that it loans the credit of a municipality to a private corporation. This is bottomed on the proposition, which we find untenable, that the purposes and functions of the airport authority are private rather than public. Powers to contract for the use of the airport, and to fix fees and rentals, are not inconsistent with the public character of the airport constructed under the act. As this court held in *Carstens* v. *City of Wood River,* 344 Ill. 319, the fact that a fee is charged for the use of a public improvement does not make that use private. It is not essential to public use that it be absolutely free to everyone. To like effect are *South Park Comrs.* v. *Montgomery Ward & Co.* 248 Ill. 299; *City of Springfield* v. *Inter-State Telephone Co.* 279 Ill. 324,

and *City of Springfield* v. *Postal Telegraph-Cable Co.* 253 Ill. 346.

In *People* v. *City of Chicago,* 349 Ill. 304, this court considered the validity of ordinances providing for a unified local transportation system under which, and by the assistance of certain acts of the legislature, it was contemplated that the city would construct a certain subway. It was there contended that the act, therein referred to as the Subway Act, violated separate section 2 of the constitution in that it made a donation of the city's credit to the aid of the railroad corporation that would use its subway. It was held, however, that the fact that the city was to build the subway at its own cost or by special assessment, and was authorized to permit the use of such subway by local transportation companies, did not violate separate section 2 of the constitution. *Murphy* v. *Dever,* 320 Ill. 186, cited by appellant in this case, was distinguished in that opinion, and it was held in *People* v. *City of Chicago,* 349 Ill. 304, that the permits granted by the ordinance to the transportation companies to use the subway did not constitute donation or lending of the city's credit. It was likewise held that the act did not offend against the due-process clauses of the State and Federal constitutions.

Counsel for appellant, on this issue of the case, cite *Washingtonian Home* v. *City of Chicago,* 157 Ill. 414, *Schuler* v. *Board of Education,* 370 Ill. 107, and *Citizens Savings and Loan Ass'n* v. *Topeka,* 20 Wall 655, 22 L. ed. 455. In the *Washingtonian Home case* the corporation, which operated a home for inebriates, was not a municipal corporation but a private one. The terms of its charter required the treasurer of the city of Chicago and Cook county to turn over to it ten per cent of all receipts from liquor licenses. This was clearly a donation in the aid of a private corporation. In the *Schuler case* the board of education sought to purchase a library from a certain pri-

vate college, which library was, however, to remain in the possession of the college, and the board of education was to loan that college a large amount of laboratory equipment. This again was clearly a case of extending the credit of a municipal corporation to a private use. In *Citizens Savings and Loan Ass'n* v. *Topeka,* 20 Wall 655, 22 L. ed. 455, it was held that the city had no authority to levy taxes for the purpose of paying for a stock subscription made by the city to a private bridge factory, as such was not taxation for public purposes. These cases are clearly distinguishable from the case before us.

We conclude that the position taken by appellant, that the purposes of the act before us are not public or governmental and do not validly support the powers granted by the act to tax or to issue bonds, cannot be sustained. *Wagner* v. *City of Rock Island,* 146 Ill. 139, cited and relied upon by appellant, cannot be held to be applicable to facts such as exist in the case before us. What was decided in that case was that the selling of water was a proprietary function. The question whether the General Assembly has power to, as here, create a municipal corporation with power to operate an agency of public safety or welfare, and to tax for it, was not before the court. We are of the opinion that such powers do not offend against the due-process clauses of the State and Federal constitutions.

It is argued by appellant that this act is open to the charge that it violates section 22 of article IV of the constitution, in that it is local or special. The fact that an act may be, or seem to be, arbitrary and unreasonable in some of its provisions does not render the same a local or special law. The test is, "Is it a general law which operates uniformly throughout the State upon all persons and localities under like circumstances?" If it is, it is not obnoxious to the provision of the constitution forbidding the enactment of local or special laws. (*People* v. *Wilcox,*

237 Ill. 421; *People ex rel. Deneen* v. *People's Gas Light and Coke Co.* 205 Ill. 482; *Cummings* v. *City of Chicago,* 144 Ill. 563.) The act before us applies alike to all communities in the State similarly situated. Airport authorities may be created with the consent of the majority of the electors within such district, in any community of the type designated, to be operated by commissioners.

It is also argued that section 3, providing for the appointment of commissioners, violates sections 9 and 10 of article IX of the constitution. Section 3 provides, among other things, the method of appointing the commissioners in cases where there is within the district one or more municipalities having a population of five thousand or more. The applicable provision of that section declares that where there is only one such municipality three commissioners shall be appointed from such municipality, one from the area within the authority outside such municipality and one shall be appointed at large. Counsel argue that this section is invalid because those appointed may not be authorized to levy taxes for the corporate purposes of an airport authority within sections 9 and 10 of article IX of the State constitution. Under the views hereinbefore expressed in this opinion, this position is not tenable. Commissioners are all to be appointed from the incorporated territory after the act has been submitted to and adopted by the inhabitants of such territory by an election. They thus become corporate officers of the authority within the meaning of sections 9 and 10 of article IX of the constitution.

It is also urged that section 2 of the act, which fixes population as a classification, violates section 22 of article IV of the constitution, and it is argued that while population may be made a reasonable basis of classification for local city and village government, population bears no relationship to the operation of an airport and therefore such a classification is unreasonable. The question

of classification by population has been frequently before this court. The question was raised in *People* v. *City of Chicago*, 349 Ill. 304, the subway case hereinbefore referred to. It was there observed that courts have frequently recognized that traffic and transportation conditions in larger cities require special treatment and afford a reasonable basis for classification. On the record before us it appears from the testimony of a representative of the Civil Aeronautics Administration, created by Federal statute, that classification of airports has been made pursuant to the Acts of Congress providing for a national airport program which recognizes such differences in population and their influence on airports by providing different lengths of runways and differences in other facilities in cities over five hundred thousand. This is but natural as greater air traffic is attracted toward larger cities, larger airplanes are to be used, longer runways and other facilities are necessary, all of which would be wholly in excess of any of the needs of small cities. In *People ex rel. Moshier* v. *City of Springfield*, 370 Ill. 541, population was recognized as a proper basis for classification for firemen's salaries. This contention cannot be sustained.

It is also argued that section 16, providing for the acquisition of the property of already existing public airports, within the district of the authority, violates the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of Illinois. This argument is based in part on the contention that the operation of these previously existing airports is a private enterprise. It is argued that the property of airports which may be found within an airport authority cannot be taken except upon payment of just compensation. This section provides that a newly created airport authority shall succeed to the interest of any pre-existing public agency in any existing public airport which is located within the corporate limits of the authority at the time it is created, and provides

that the authority shall reimburse such pre-existing public agency for its actual previous expenditures for such public airport. If it be conceded that private rights are involved in the property of such previously existing public airport, there would be much weight to the contention. However, since we conclude that an airport authority is a public municipality, and section 16 applies only to other public airports found within its boundaries, no question of the right to compensation for the taking of private property arises. Municipal corporations are creatures of the legislature. By their incorporation they acquire no contract rights. They are merely parts of the machinery employed in carrying on the affairs of the State. They exist only for public purposes and have no powers except such as are given them for public purposes. In *People* v. *Bowman,* 247 Ill. 276, it was held the General Assembly has a right at all times to regulate and control municipalities created by it, to control their franchises and funds, and to alter, modify or abolish them at pleasure, so long as their property is not diverted from the uses and objects for which it was given or purchased. Section 16 specifically does not apply to previously existing private airports found within such new district. This section is not open to the objection urged.

It is also argued that section 18, known as the disconnecting section, is invalid because the classification provided is not based on any rational differences. This section provides that after the site of an airport to be acquired and improvements to be placed thereon have been determined by the board of commissioners, the commissioners shall publish notice of the approximate location of the site, and any territory within the corporate limits of the authority, containing twenty or more acres, may be disconnected from such airport upon filing in the county court, a petition for that purpose, setting out the facts specified in section 18 as conditions. The authority shall have notice

of such petition. Taxpayers residing in the authority may appear and defend against it. If the allegations of the petition are found to be true, the court is required to order the specified land disconnected. An appeal may be taken from that decision. It is provided that land disconnected from an authority shall continue to be subject to taxes to pay the principal and interest on bonds issued by the authority prior to the filing of the petition for disconnection. It is objected that the requirement that there be twenty acres or more has no rational relation to the operation of an airport and is not helped by the conditions named; that since the owner of twenty acres, or several owners of an aggregate of twenty acres, already developed as a residential, commercial or industrial area, might become disconnected under this section, while on the other hand an owner or owners of twenty acres laid out for development but not developed, could not disconnect, such classification is arbitrary and discriminatory and violates section 22 of article IV of the constitution. This section of the act differs materially from section 20 in the 1943 act, which was held invalid. If the classification of territory for disconnection purposes is based upon a real and substantial difference in the territory to be disconnected from that which remains in the authority, the constitutional requirements regarding classification are met.

In *Punke* v. *Village of Elliott*, 364 Ill. 604, provisions of a statute almost identical with the present section 18, which permitted the disconnection of territory from the corporate limits of cities or villages, was considered, and practically the same objections raised as are here urged. It was there contended that the classification made was unreasonable. It was pointed out, however, that classification of objects and subjects for legislative purposes rests primarily in the discretion of the legislature. That body is permitted a wide range of discretion in exercising such power. It is not required that such classification be accu-

rate, logical, harmonious or scientific, so long as it is not arbitrary and will accomplish the legislative purpose. The basis for classification in that act, substantially the same as in the act before us, was sustained in the *Punke case.* To like effect are *Geweke* v. *Village of Niles,* 368 Ill. 463, *Stewart* v. *Brady,* 300 Ill. 425, and *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283, 42 L.ed. 1037. This objection cannot be sustained.

It is also argued by appellant here that because, under section 18, the disconnected territory is still liable to be taxed to pay the interest and principal on bonds issued before the petition to disconnect was filed, the result is that such lands are released from general taxation until such bonds are paid, and therefore section 18 offends against the provisions of section 3 of article IX of our constitution, requiring that exemption from taxation be only by general law. This contention stems from a misconception of the provisions of section 18, which are that "Any lands disconnected from an authority shall continue subject to taxes to pay the principal and interest of any bonds issued by the authority prior to the filing of the petition for the disconnection of such lands from the authority." It will be observed that this in nowise exempts such disconnected lands from general taxes. It is not an exemption provision. Upon being disconnected from the district of the authority, such lands, though no longer subject to general taxes of the authority, remain subject to taxes to pay bonds of the district issued prior to the petition to disconnect. Nowhere does the act purport to exempt such lands.

It is also argued, however, that the effect of section 18 is to violate the uniformity provisions of sections 1, 9 and 10 of article IX of the constitution. Since the effect of the disconnection order is merely to place disconnected territory in the same position it occupied before organization of the authority, so far as general taxation is con-

cerned, it is not tenable to contend that uniformity of taxation is violated.

It is further claimed that this act violates section 13 of article IV in that certain provisions amend other acts and also are not embraced in the title of the act. This position is untenable. The act is single and complete in itself. The rule established in this State is that where an act is complete in itself, without reference to a general act, it does not contravene section 13 of article IV merely because it repeals, modifies or amends by implication the general act. *St. Louis Bridge Co.* v. *Becker,* 372 Ill. 102; *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 Ill. 98.

The act before us is not open to any of the constitutional objections urged and the judgment order of the circuit court quashing the writ of *certiorari* was right and will be affirmed.

*Judgment affirmed.*