### DETERMINED IN THE

# SECOND DEPARTMENT

### IN THE

# APPELLATE DIVISION,

## 𝔐𝔞𝔯𝔠𝔥, 1899.[*]

---

FRANCIS T. HOLDER, Appellant, *v.* THE CITY OF YONKERS, Respondent.

*City of Yonkers — power of, to lease land for a park.*

The power conferred upon the common council of the city of Yonkers by section 11 of title 6 of the charter (Laws of 1895, chap. 635), " to purchase or lease such lands and to erect such buildings as may be necessary for city purposes," is applicable to all city purposes, and extends to the temporary or permanent leasing of lands to be used for the purposes of a public park by the inhabitants of the city.

The effect of such provision is not limited by the fact that section 2 of title 7 of the charter confers authority to acquire lands for park purposes, as the latter section has reference to local improvements, as distinguished from those affecting the inhabitants generally.

APPEAL by the plaintiff, Francis T. Holder, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 26th day of November, 1898, upon the decision of the court rendered after a trial before the court, without a jury, at the Westchester Trial Term, dismissing the plaintiff's complaint upon the merits.

*Joseph F. Daly,* for the appellant.

*James M. Hunt,* for the respondent.

---

[*] The other cases of this term will be found in volume 38 App. Div.—[REP.

APP. DIV.—VOL. XXXIX.        1

HATCH, J. :

The court below has found that the lease, which furnishes the subject of this action, was in form sufficient to create liability ; that the proceedings which led to its execution furnished sufficient authority therefor, and that this action, coupled with a subsequent occupation and use of the premises leased, was sufficient upon which to found an obligation to pay rent if authority existed in the defendant to create a liability against itself for the particular purpose for which the lease was made. Upon the latter ground the court held that the contract was one beyond the power of the defendant to make, and was, therefore, void. We are quite in harmony with the view of the learned court below upon the first of these questions, and think that the evidence abundantly sustained its judgment in this respect. We are not able, however, to agree in the conclusion reached by the learned court upon the second ground. Upon the contrary, our view of the law leads us to the conclusion that the defendant possessed authority to make the contract which it executed, and became bound thereby to pay the rent reserved.

The lease in question was of certain lands to be used for the purpose of a public park by the inhabitants of the city of Yonkers. The lands were so used by the inhabitants generally ; seats were placed therein, the grounds somewhat improved, and public concerts given, which large numbers of the people of the city attended. The charter of the city of Yonkers provides : "The common council shall have power, by a two-thirds vote of all its members, to purchase or lease such lands and to erect such buildings as may be necessary for city purposes." (Laws of 1895, vol. 2, chap. 635, tit. 6, § 11.) So far as we are able to find, this authority to purchase or lease land is subject to no restriction or limitation, contained in the charter or elsewhere, except that a limitation is placed upon the amount of indebtedness which may be incurred for such purpose, and the amount which shall burden the city in any one year. These limitations in nowise affect any question now before us. The authority is granted in express terms, the obligation incurred is within the limitation, and the only question which remains is : Was the authority exercised for a city purpose ? The acquirement of lands for purposes of a public park is a city purpose. (*People ex rel. Murphy* v. *Kelly,* 76 N. Y. 487.) The health and

comfort of the inhabitants are subjects of municipal charge. The obligation to furnish pure air is the same as the obligation to furnish pure water. (*Matter of Mayor*, etc., 99 N. Y. 569, 585.) Authority to discharge this public obligation must always be fairly construed, so that municipal bodies may fulfill their functions in a manner proper and beneficial to the inhabitants of the municipality. In construing powers of this character the courts have recently indicated a liberal tendency in order that the welfare of the citizens may be subserved. (*Sun Publishing Assn.* v. *Mayor*, 8 App. Div. 230; affd., on appeal, 152 N. Y. 257.) It is asserted, however, that the provision of the charter to which we have called attention excludes authority to acquire lands for park purposes, for the reason that the subject-matter is controlled by the provisions of section 2 of title 7 of the charter. This section clearly has reference to local improvements as distinguished from those affecting the inhabitants generally. Its subject is the improvement of streets, public places and parks, and while undoubtedly a public park could be opened pursuant to its provisions, the cost of which might be assessed upon all the inhabitants as beneficial to them, yet its purpose in the main is to authorize a local improvement of streets and public places, the cost of which is to be borne only by those persons specially benefited, and to this end the cost is required to be levied upon those only who receive the benefits. We think that it in nowise limits the general power to acquire or lease lands where the purpose is such as the law recognizes, and the acquirement is for the benefit of all the inhabitants. Both powers can well stand together, as neither tends to the destruction of the other. Where the act affects all the people equally, a case is presented where the authority under the general power is properly exercised, as it operates upon all and for all. Where only a part are affected, the requirement is that only those persons can invoke the power who are to pay the cost, as section 4 of title 7 provides. It might be quite difficult to frame a petition under section 4, if the lands proposed to be taken for a public park were not contiguous to any street, and did not abut thereon. And if the lands proposed to be taken laid wholly outside the corporate limits, no person or body of persons could make such petition, and yet the right would exist to take the lands if the conditions brought the subject-matter

within a city purpose. (*Matter of Mayor, etc., supra.*) The power which takes is in each case the same, and the power exist-ing, the right to exercise it cannot be denied. It is said that the general power has reference only to such matters as are usually the subject of lease, like a building for city offices and similar objects. The language used is not subject to such limitation ; it is as applicable to one city purpose as another. The authority is as broad as the purpose, and if that be a city purpose, then by express language it falls within it. It is suggested that the temporary lease of a park or a street is foreign to the scheme of the creation of a permanent public place which is contemplated when a street or a park is established. As to a street, there is much force in this con-tention. When a street is established, it contemplates the making of a way for passage which shall be permanent, as it is established for the reason that there exists a necessity for its use, which, instead of growing less, increases as the population enlarges and the burden of use becomes greater. But yet it cannot be doubted that, even as to a street, circumstances may exist where it would be highly proper to temporarily acquire a right of way for passage while a permanent street was being opened, and that a lease of land to that end would constitute it a city purpose. As to public parks, there is much less force in the suggestion than as to a street. The purpose of tem-porary use as to it may have for its object the determination of the question as to whether it will answer the public need. The location of public parks, where the object is to benefit the whole people, furnishes many times a subject difficult of correct solution. It is not unusual that several available plots of ground are offered from which to select, each one possessing some advantage not common to the others. We should think it quite within the power of the city to make a temporary lease of one or all for the purpose of deter-mining by actual test which one was the most attractive and to which the greater number of people resorted, and thereby deter-mine which location would confer the greatest benefit upon the greatest number. The need of a park may be immediate and the necessity of use urgent, and yet the municipality be unable to pur-chase for lack of funds or other reasons. Under such circumstances, we think the municipality might temporarily supply the need. This suggestion is not fanciful. Conditions have existed, breeding epi-

demics, where the necessity for open space was required to preserve life, and where fresh air mitigates the disease. Dense population requires these breathing places, and temporary supply may be as much within an exigency as the furnishing of water or proper drainage, or the abatement of a nuisance.

We reach the conclusion that it was not needful that express provision should have been made by the Legislature authorizing the acquirement of land in terms for a public park, but that the right to acquire such land is a city purpose, and that authority existed to so acquire it, either permanently or temporarily, within the provisions of the charter. It is quite possible to uphold this lease to the extent of authorizing a recovery for use and occupation upon other grounds. We do not find it necessary, however, to discuss them or place our decision thereon. We conclude that the execution of the lease was a proper exercise of power and that the city became liable to pay the rent reserved therein.

It follows that the judgment should be reversed and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed and new trial granted, costs to abide the event.