HANRAHAN v. TERMINAL STATION COMMISSION OF CITY
OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. MUNICIPAL CORPORATIONS (§ 859*)—INDEBTEDNESS—MUNICIPAL PURPOSES
—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Laws 1911, c. 842, creating a railway terminal station commission of the city of Buffalo, defining its powers, and authorizing the city to issue bonds for the general purpose of effecting a change of the location of railroad stations and terminals, and a change in the location and grades of streets in order to lessen obstruction of the streets by railroad tracks and to provide adequate terminal and transportation facilities, involving the condemnation and exchange of land by the city, and by section 6 authorizing the commissioners to agree with any railroad as to the portion of the work to be done by the railroad and by the city, and as to the cost to be paid by each, and providing that the cost and maintenance of structures built on the land owned by any railroad should be paid by such railroad, when considered with the Grade Crossing Act of the city of Buffalo (Laws 1888, c. 345), as amended by Laws 1911, c. 358, which, by section 2, excludes from the jurisdiction of the grade commissioners territory including all railroad terminals, contemplates that the railroads

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

will themselves acquire by purchase or condemnation such land as it is necessary that they should own, and hence does not violate Const. art. 8, § 10, which declares that no city shall give any money or property, or loan its money or credit to or in aid of any corporation, nor incur any indebtedness, except for city purposes.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1814; Dec. Dig. § 859.*]

2. CONSTITUTIONAL LAW (§ 48*)—VALIDITY OF STATUTORY PROVISIONS.

Where a statute is capable of two interpretations, one of which renders it valid and constitutional and the other void, that interpretation should be adopted which renders it valid.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

3. MUNICIPAL CORPORATIONS (§ 131*)—OFFICERS—ELECTION OR APPOINTMENT—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Under Const. art. 10, § 2, which provides that all city officers whose election or appointment is not provided for by the Constitution shall be elected by the electors of such cities or appointed by such authorities thereof as the Legislature shall designate, and that all other officers whose election or appointment is not provided for, or whose offices which shall be hereafter created by law shall be selected by the people or appointed as the Legislature may direct, it was competent for the Legislature in enacting Laws 1911, c. 842, creating a railway terminal station commission of the city of Buffalo, to itself appoint the commissioners.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 266; Dec. Dig. § 131.*]

4. STATUTES (§ 97*)—PRIVATE OR LOCAL ACTS—CITY TERMINAL COMMISSION—CONSTITUTIONAL PROVISIONS.

Laws 1911, c. 842, creating a railway terminal station commission for the city of Buffalo, defining its powers and authorizing the city to issue its bonds, does not violate Const. art. 3, § 18, which provides that the Legislature shall not pass a private or local bill laying out, opening, working, or discontinuing roads and highways, since that provision does not apply to city streets.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 108, 109; Dec. Dig. § 97.*]

5. MUNICIPAL CORPORATIONS (§ 911*)—INDEBTEDNESS—BONDS—EXPENSES OF TERMINAL COMMISSION—LEGALITY.

Under Laws 1911, c. 842, creating a railway terminal station commission for the city of Buffalo, expenses amounting to $5,000, incurred by the commission for purposes authorized by the act, were a proper and legal charge against the city of Buffalo, for which it was liable, and might issue its bonds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1899, 1901; Dec. Dig. § 911.*]

Action by James Hanrahan against the Terminal Station Commission of the City of Buffalo, Louis P. Fuhrmann, and others, as commissioners, and against the City of Buffalo. Submission of controversy without action under Code Civ. Proc. § 1279. Judgment directed in favor of the defendant Terminal Station Commission of the City of Buffalo, and against plaintiff and the defendant City of Buffalo.

The issues were as to the constitutional validity of an act of the state Legislature which became a law July 28, 1911, being chapter 842 of the Laws of 1911, entitled "An act creating a railway terminal station commission of the city of Buffalo, defining its powers and authorizing said city to issue its bonds."

The general scheme of this act is as follows: It names 11 citizens of Buffalo, who, together with the mayor, the commissioner of public works, and the chairman of the grade crossing commission, ex officio, are to constitute a commission who are to adopt plans for the purpose of relieving the congested condition of the railroad stations and terminals of the city of Buffalo, with power to require the railroads to make changes in the location or use of their tracks, switches, terminal stations, and facilities within the city, and to require the city to make changes in the location or grades of the streets, alleys, or lands owned by the city adjacent or contiguous to said railroads, in order to secure to the public freedom from the obstruction of the streets by the railroads, and adequate services and facilities for the transportation of passengers, freight, and property in the city. The plan, when adopted, is to cover and include "the location of the railroad passenger and freight stations (which shall be located at or near their present location), yards and appurtenances and facilities to be used in connection therewith, and of the public and railroad approaches thereto, and of the streets, squares and public places contiguous or adjacent to said stations, yards, facilities or approaches to be used for said stations, yards and therewith connected facilities by the respective railroad corporations whose railroads enter or operate within the city of Buffalo; the change in the location or grades of the streets, alleys or lands owned by said city, and the change in the grades of existing structures carrying streets over or under railroads, which may be necessary in the judgment of said commissioners to secure to the public freedom from the obstructions of the streets of said city by railroads and adequate services for the transportation of passengers, freight and property in the use of the railroad tracks, switches, terminal stations or facilities." The commission is then by order to direct the railroad companies and city to make the improvements required of them. The commissioners are authorized to contract in behalf of the city with any railroad or transportation corporation for making the changes and improvements contemplated, and for the part or portion of the work to be done by the company and the city respectively, and the apportionment of the cost as between the company and the city. The commissioners are empowered to condemn lands for changing and altering streets, the expense to be paid by the company and the city in the proportion agreed upon or fixed by the commission. The title of the lands so acquired vests in the city of Buffalo. In case the commissioners and any company fail to agree upon the apportionment of the work, or of its cost as between the city and such company, the commission is authorized to apply to the Supreme Court for the appointment of commissioners to determine such apportionment. The commission is authorized to acquire any lands in the city of Buffalo, and to close or alter any of the streets, alleys, or public places necessary for carrying out plans adopted. Any lands so acquired which shall be used by any railroad company are to be paid for by such company, and the title, after such payment, vests in the company. All work to be done by the city is to be let to the lowest bidder by the common council, but the commissioners may authorize any company to do the whole or any part of the work, the city paying to the company doing the work its proportion of the cost as agreed upon or apportioned. The expenses of the commission are to be paid by the city of Buffalo, including the pay of its engineers, attorneys, stenographers, etc.. but the commissioners serve without compensation. The city is authorized to borrow money from time to time with which to pay its share of the expense of doing any work, or to pay any awards for the taking of lands, including the salaries of the employés of the commission and their expenses, and the mayor and comptroller are directed to issue the bonds of the city for such purpose in amounts and payable at such times and at such rates of interest as the common council may determine.

It appears from the agreed statement of facts that on December 19, 1911, the commission, having taken the necessary preliminary steps under this act, made known a plan proposed to be adopted by them for the purpose of relieving the congested condition of the railroad station and terminal of the Delaware, Lackawanna & Western Railway Company, as lessor, and the Delaware, Lackawanna & Western Railroad Company, as lessee, and that hearing

thereon was had on the 4th day of January, 1912, pursuant to notice duly given, and that more than seven of the commissioners have adopted the proposed plans, copy of which is part of the agreed case, and that the commissioners are about to contract on behalf of the city of Buffalo with said railway companies for the purpose of making the improvements set forth in such adopted plan, that the commissioners have incurred expenses in the discharge of their duties for purposes authorized by the act exceeding $5,000, which the commissioners claim the city is liable to pay, and which they have demanded of the city, and for which they have asked the city to issue its bonds, and that the board of aldermen of the city has refused to determine the amounts, maturity, or rate of interest of such bonds.

Plaintiff is a taxpayer of the city of Buffalo, having the necessary qualifications to maintain a taxpayer's action, as authorized by section 1925 of the Code of Civil Procedure and section 51 of the General Municipal Law (Consol. Laws 1909, c. 24) to prevent waste of the funds of the city or injury to the funds or property of the city. Plaintiff and defendant the city of Buffalo contend that the act in question is void, in that it violates section 18 of article 3 of the state Constitution, which prohibits a private or local bill for "laying out, opening, altering or discontinuing roads, highways or alleys. * * * Granting to any corporation, association or individual the right to lay down railroad tracks"; also section 10 of article 8, which provides that "no county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation * * * nor shall any such county, city, town or village be allowed to incur any indebtedness, except for county, city, town or village purposes"; also section 2 of article 10 as to the manner of electing city, town, and village officers; also, section 6 of article 1, which provides that "no person shall be * * * deprived of life, liberty or property without due process of law"; also, section 1 of article 14 of the amendments to the Constitution of the United States, which provides that "nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Plaintiff and the city claim that, by the proposed contract with the Lackawanna Railroad Companies, it is proposed to give the money and property of the city of Buffalo and to loan its credit to and in aid of the said companies, and to incur indebtedness for other than city purposes, which involves a waste of the public funds of the city.

The parties have agreed that the court shall determine the constitutionality of this act and render judgment (1) as to whether the commissioners named in the act and the commission are a legally and lawfully constituted body; (2) whether the expenses incurred by the commissioners amounting to $5,000 are a proper and legal charge against and upon the city of Buffalo, and whether the city is liable therefor; (3) as to whether the city can legally issue, and whether it can be compelled to issue, its bonds for the purpose of paying the aforesaid $5,000, the expenses of the commissioners; and, (4) as to whether plaintiff is entitled to an injunction preventing the issuance of the aforesaid bonds for the payment of the expenses of the commissioners, or other equitable or injunctive relief incident thereto, and the granting of such judgment and relief as may be proper.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Thomas C. Burke, of Buffalo, for plaintiff.

Wilber E. Houpt, of Buffalo, for defendant Terminal Station Commission.

Clark H. Hammond, City Atty. of Buffalo (Harry D. Sanders and William S. Rann, both of Buffalo, of counsel), for defendant City of Buffalo.

Roland Crangle, of Buffalo (Simon Fleischmann and Louis E. Desbecker, both of Buffalo, of counsel), for interested taxpayer.

FOOTE, J.  [1, 2]  We will first consider whether this statute violates section 10 of article 8 of the state Constitution, which, so far as pertinent, is as follows:

"No * * * city * * * shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation * * * nor shall any such * * * city * * * be allowed to incur any indebtedness except for * * * city * * * purposes."

It is the contention of plaintiff and the defendant the city of Buffalo that this statute was intended to, and does, authorize and provide for payment by the city of Buffalo of a portion of the cost of lands to be acquired for railroad stations, tracks, etc., the title to which lands is to become vested in the railroad company, and that such a contribution of city money falls within the prohibition of the above-quoted section of the Constitution.

The defendant the terminal commission contends that the act, properly construed, does not authorize or contemplate such a contribution of city money to the railroad companies. Nor does this defendant claim that, if the act does contemplate the payment by the city of Buffalo of any part of the purchase price of lands for a new or additional right of way or stations, yards, or facilities for improving and enlarging the terminals of the railroads, it would be a valid exercise of legislative power.

The question, therefore, turns upon the construction of the act to ascertain its true intent and meaning. The purpose of the act and the general power of the commissioners is thus stated in the first section. After naming the commissioners, this section proceeds:

"Any seven of whom are authorized and directed to adopt from time to time, plans for the purpose of relieving the congested condition of the railroad stations and terminals in the city of Buffalo, which plans shall require the railroads or other transportation corporations operating within the city of Buffalo, to make such changes in the location or use of any existing tracks, switches, terminals, stations or railroad facilities within said city, and which shall require the city to make such changes in the location or grades of the streets, alleys or lands owned by said city, adjacent to or contiguous to such tracks, switches, terminals, stations or facilities, which in the judgment of said commissioners will secure to the public freedom from the obstruction of the streets of said city by railroads and adequate services and facilities for the transportation of passengers, freight and property in said city."

Nothing contained in this section directs or implies that the city funds are to be used to acquire additional lands for the benefit of the railroad companies. It appears to be the intent of this section that the commission shall be vested with a power in respect to compelling railroad companies to improve their terminals similar to that vested in the state public service commissions, and, in addition, that the commission shall have power over the city streets and city-owned property to compel the city to make such changes and alterations therein as may be necessary to permit the enlargement and improvement of the railroad terminals and at the same time relieve the streets of railway tracks and structures as far as possible in the interest of the city and its inhabitants.

After the commissioners have prepared a tentative plan for the proposed improvement of any railway terminal and have held the hearing required, after notice to all interested, section 3 of the act requires the commissioners then to make a report in writing—

"wherein they shall state the plan adopted by them; the location of the railroad passenger and freight stations (which shall be located at or near their present location), yards and appurtenances and facilities to be used in connection therewith, and of the public and railroad approaches thereto, and of the streets, squares and public places contiguous or adjacent to said stations, yards, facilities or approaches to be used for said stations, yards and therewith connected facilities by the respective railroad corporations whose railroads enter or operate within the city of Buffalo; the change in the location or grades of the streets, alleys or lands owned by said city, and the change in the grades of existing structures carrying streets over or under railroads, which may be necessary in the judgment of said commissioners to secure to the public freedom from the obstructions of the streets of said city by railroads and adequate services for the transportation of passengers, freight and property in the use of the railroad tracks, switches, terminal stations or facilities."

The plan for the improvement having thus been definitely determined, the commissioners are then required by section 4 to make and serve an order directing such improvements and changes to be made within the time specified in the order, and the section then proceeds as follows:

"And such railroad or other transportation corporation and the city of Buffalo are hereby required and directed to make the improvements or changes required of them, or any of them, by such order of the commission served upon them as herein provided."

Section 5 provides that the commissioners are authorized on behalf of the city to contract with any railroad company for the purpose of carrying out the provisions of the act and to agree upon the change of location or grade of streets, and for the exchange or sale of lands owned by the city "at a price therefor to be determined as hereinafter provided." This price, as appears from subsequent sections, is to be the fair market value of the lands owned by the city, to be determined by three commissioners appointed by the Supreme Court as in condemnation proceedings.

Thus far nothing appears in the act by which any city money is to be used to purchase property for the use of the railroad companies. We now come to section 6, which is claimed to authorize such use of city money. We quote this section in full:

"The commissioners may agree with any railroad or other transportation corporation interested, and any of them, what portion of the work necessary to be done shall be done by any such company interested, and what portion of the work shall be done by the city, and what portion of the cost of the proposed improvement shall be paid by each. The cost of any structure and the maintenance thereof built upon the lands to be used by any railroad company in the erection and maintenance of its railroad passenger or freight stations, yard or approach, shall be at the sole expense of said railroad company interested."

The first sentence of this section is copied almost verbatim from section 9 of the Grade Crossing Act for the city of Buffalo, as amended by chapter 358 of the Laws of 1911, as are many other sec-

tions of the present act.  Standing by itself, it might be interpreted as authorizing an agreement between the commissioners and a railroad company by which the city should pay a portion of the cost of the lands to be acquired and used for railroad purposes, the title to which is to vest in the railroad company; but, construed with the previous sections, we think it was not intended to authorize such use of city money.  It certainly does not require the commissioners to enter into an agreement of that character, and, in view of the constitutional prohibition, an agreement of that character, we may assume, could not be lawfully made, and, if made, could not be lawfully carried out.  It is urged that the last sentence of this section, which provides expressly that the cost of any structure to be built upon the railroad lands shall be at the sole expense of the railroad company interested, indicates an intention to permit the cost of the lands upon which these structures are to be erected to be paid in part by the city.  If, in the construction of this section we were not to resort to the provisions of the prior sections, the suggestion as to the last sentence of the section would have much force in determining the meaning of the section as a whole, but we are satisfied that it was not the intention of the Legislature by this section to authorize the payment of city moneys for the purchase of land, or to pay any part of the purchase price of land to be acquired and used exclusively for railroad right of way and yards, stations, and structures, the title to which lands was to be vested in the railroad company.  The purchase of lands for a railroad right of way, freighthouse, station, yard, or other terminal facilities to be owned by the railroad company would not, we think, be a city purpose, or a purpose for which city funds derived from taxation could lawfully be used.

If section 6 is capable of two interpretations, one of which renders it valid and constitutional and the other void, that interpretation should be adopted which renders it valid.  By section 1 the commission is given power to require the railroads to make changes in their existing terminals, and the city changes in the streets, and by section 4, after the proposed changes have been definitely determined upon, they are to order the railroads and the city to make the improvements or changes required of them; that is to say, the railroads to make the changes to or for the benefit of its property, and the city the street alterations.  As some of the work will consist of eliminating grade crossings or work in streets where the railroad tracks are or will be located, it is evident that there will be work to the expense of which the city and the railroads may properly contribute in some just proportion and to which section 6 may properly apply entirely disconnected with the purchase of additional lands for the exclusive use of the railroads.

Nor is there anything in section 7 which requires or permits payment of city money for the purchase of lands for the railroads.  That section provides for condemnation proceedings in the Supreme Court for two purposes: To acquire from private owners any lands necessary for the changing of the grade of any street, closing or alteration of a street, widening of a street, or the opening of a new street, and to

ascertain the damages of any owners of property injured thereby; and (2) to ascertain and determine the fair market value of any lands owned by the city to be exchanged or sold by it. And, on the coming in of the report of the commissioners appointed in such condemnation proceedings, the court is directed to order the award "to be paid by the railroad or other transportation corporation, and the city, in such proportion as shall have been fixed by the commission, or by the agreement provided for in § 6." This section further provides that, upon the payment being made, "the fee of the lands sought to be taken shall vest in the city, and all claims for damages to the property injured shall be extinguished." It is clear that this section has no reference to lands to be acquired for railroad stations or railroad property, or for the private use of railroads, except in the case of lands already owned by the city which are to be exchanged or sold, and as to such lands, if they are exchanged with or sold to a railroad company, it is to be at their fair market value to be paid to the city by the railroad company.

Section 8 provides that:

"In case the commissioners and any company shall not agree upon the apportionment of the work or the cost of the proposed improvement between the city and any of the said companies, the commissioners may apply to the Supreme Court at a special term thereof for the appointment of three commissioners to make such apportionment."

And these commissioners are required to make their report in writing—

"designating what portion of the work necessary to be done shall be done by the railroad company or companies, whose tracks render the work necessary, who shall not have agreed with the commission as to the division of the work or the cost thereof, and what portion shall be done by the city, and the proportion of the cost of the proposed improvement to be paid by each."

This section, we think, has no reference to the expense of acquiring lands by the railroad companies to be their exclusive property for their stations, terminals, rights of way or yards.

By section 9 the commissioners are authorized and empowered—

"to acquire any lands in the city of Buffalo, to close or alter any street, alley or public place, to change in or remove from any such street, alley or public place any gas or water pipes, sewers, conduits or other objects, or change the grade of any street which they shall decide shall be necessary for the purpose of carrying out the plans and contracts hereby authorized, and the proceedings provided for in § 7 of this act shall be applicable for the purpose of acquiring title to any lands necessary to be taken."

That is to say, they may acquire these lands by condemnation proceedings. They can acquire only such lands as are necessary for the purpose of carrying out the plans and contracts authorized by the act. This, we think, limits the power of the commissioners to lands needed for street purposes, for the alteration of streets, or for easements necessarily connected with the elevation or depresssion of streets or railroads at the crossings, or to carry existing railroads over or under street crossings. It does not empower the commissioners to condemn lands of a private owner for the benefit of any railroad company to become part of its railroad. That power the rail-

road companies already have under the Railroad Law, and there is no occasion, if indeed there is any power, to confer such authority upon the commissioners.

Section 10 is as follows:

"Any lands so taken or any part thereof, or interest or easement therein, shall be used by any railroad, terminal, bridge or other transportation corporation under the provisions of a plan adopted by said commission as provided herein for any of the structures directed to be erected by the commissioners appointed by this act. The commissioners shall notify such company to pay the city the amount fixed by order of the court confirming the report of the commissioners to ascertain the amount of compensation to be paid therefor and the costs and expenses of the proceedings to take the same, and thereupon such company shall pay the same to the city treasurer. Upon such payment being made the fee of the land taken, or the interest or easement to be acquired therein, shall vest in such company."

This section is almost a literal copy of section 13 of the Grade Crossing Act, as amended by chapter 358 of the Laws of 1911. In attempting to copy this section, the word "If," being the first word in the section in the Grade Crossing Act, appears to have been unintentionally omitted, for it certainly could not have been the intention to require the railroad companies absolutely to use all the lands which the city may acquire, including the land which it must acquire for street purposes. No doubt the intention of the section is as if it had read as in the section of the Grade Crossing Act: "If any lands so taken * * * shall be used by any railroad company," etc.

The question is: Does this section contemplate or authorize the commissioners to proceed by condemnation to acquire for the railroad companies lands on which to erect new terminals, stations, or new or additional right of way or freight yards, or other lands to be owned in fee by the railroad companies? As the section was copied from a section of the Grade Crossing Act, we may look to that act to see what meaning the words had as there used. That act dealt with grade crossings, and under it a large number of railroad grade crossings in the city of Buffalo have been eliminated and viaducts constructed, carrying streets over railroads, and bridges carrying railroads over streets, and it is evident that the section in the Grade Crossing Act which provides for the railroad companies paying the awards for lands upon which are erected "any of the structures directed to be erected by the commissioners appointed by this act," the title to which shall thereupon vest in the company, has reference to such bridges and viaducts, and not to railroad stations, freighthouses, or similar structures which may be provided for by the terminal commission, for no such structures were to be provided for by the grade crossing commission.

In this connection it is important to note that by chapter 358 of the laws of 1911, an act passed at the same session as the Terminal Commission Act now under consideration, section 2 of the Grade Crossing Act was amended so as to exclude from the jurisdiction of the grade crossing commissioners certain territory in the city of Buffalo which is said to include all the territory on which are located the terminals of the various railroads in that city. Hence, the matter of

dealing with grade crossings, elevation, and depression of streets and railroads within this excepted territory seems to be now wholly in the hands of the terminal commission and removed from the jurisdiction of the grade crossing commission, and it was, perhaps in view of this that section 10 and some other sections of the Grade Crossing Act have been copied into this Terminal Commission Act, so as to continue in the terminal commission in their territory a power and jurisdiction similar to that which the grade crossing commissioners had exercised. There may be, therefore, lands acquired by the terminal commission at or near street crossings upon which will be erected structures in the form of bridges or viaducts for which the plan adopted by the commissioners may require the railroad companies to take title to the lands and reimburse the city for the expense of acquiring them as has been done heretofore under the Grade Crossing Act. If section 10 was intended to provide for cases of that kind, it does not contemplate the contribution of city moneys contrary to the constitutional provision here in question.

We need not at this time consider whether, if section 10, in connection with section 9, was intended to authorize the commissioners to acquire by condemnation lands for stations, yards, and rights of way for the railroad companies, the Legislature could lawfully confer such power upon the commission. We think such was not the purpose and intent of these sections, and that the act, as a whole, contemplates that the railroad companies themselves will by purchase or condemnation under the Railroad Law acquire such additional lands as it is necessary they should own.

No other section of this act deals with the question of the manner in which lands to be owned by the railroad companies are to be acquired or paid for. We conclude, therefore, that the act does not offend against section 10 of article 8 of the state Constitution.

[3] The plaintiff and the defendant the city of Buffalo contend that the commissioners named in the act and the commission are an illegally and unlawfully constituted body, and that their official acts are illegal, null, and void, because of section 2 of article 10 of the state Constitution, as follows:

"All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct."

The commissioners are officers whose offices have been created by law since the adoption of the Constitution in 1894. They may, therefore, be elected by the people, or appointed, as the Legislature may direct. We think it was competent for the Legislature to itself make the appointment in the act creating the commission, and it was so held as to the act creating the Rapid Transit Commissioners of the city of New York in Sun Publishing Ass'n v. Mayor, 8 App. Div. 230, 40 N. Y. Supp. 607, affirmed 152 N. Y. 257, 46 N. E. 499, 37 L. R. A. 788.

[4] It is also contended that the act is unconstitutional in that, being a private or local act, it authorizes the laying out, opening, altering, and discontinuance of streets in the city of Buffalo, contrary to section 18 of article 3 of the Constitution, which provides:

"The Legislature shall not pass a private or local bill in any of the following cases:   *   *   *   Laying out, opening, working or discontinuing roads, highways or alleys, or for draining swamps or other low lands."

The court of Appeals has held that this section of the Constitution is not applicable to city streets. Matter of Lexington Ave., 29 Hun, 303, affirmed 92 N. Y. 629; People v. Banks, 67 N. Y. 574; Matter of Woolsey, 95 N. Y. 135.

We have examined the other grounds of objection to this act based upon other provisions of the state Constitution, and we think that none of them are well taken, or can be sustained, or that they are so serious as to require discussion.

In view of the construction which we have placed upon this statute, we think there is nothing in the brief submitted by the intervening taxpayer for which we need to prolong this opinion. We think the questions considered are properly before this court in the agreed case, and that judgment may be pronounced as to the constitutionality of the act, which is the only question before the court. Since this case was submitted, our attention has been called to the opinions of the Court of Appeals in the cases of Admiral Realty Co., John R. Ryon and John J. Hopper v. City of New York et al., 99 N. E. 241, decided June 29th, not yet officially reported, being taxpayers' actions brought to restrain the proposed contracts for the new subways in the city of New York. So far as the prevailing opinion in these cases touches the questions involved here, we think the views herein expressed are in harmony therewith.

[5] We conclude that judgment should be rendered in favor of the defendant the terminal station commission of the city of Buffalo and against plaintiff and the defendant the city of Buffalo, adjudging (1) that the commissioners named in said act and commission are a legally and lawfully constituted body; (2) that the expenses incurred by said commissioners amounting to $5,000 are a proper and legal charge against the city of Buffalo, and that said city is liable therefor; (3) that the city of Buffalo can legally issue, and it can be compelled to issue, its bonds for the purpose of paying the aforesaid $5,000, the expenses of said commission; (4) that plaintiff is not entitled to an injunction preventing the issuing of said bonds or the payment of said expenses of said commissioners, or to any other equitable or injunctive relief. All concur.