JOHN HOLLEY CLARK, JR., Respondent, *v.* FIORELLO H. LAGUARDIA, as Mayor of the City of New York, and Others, Appellants.

Second Department, July 3, 1935.

*Joseph L. Weiner* [*Paul Windels, Corporation Counsel*, with him on the brief], for the appellants.

*John Holley Clark, Jr.*, respondent, in person.

TOMPKINS, J. This is a taxpayer's action to restrain the city of New York and its officials from operating municipal buses on certain routes and streets in that city.

Two questions are involved in this appeal: (1) Does the complaint state facts sufficient to constitute a cause of action, and (2) if it does, is the plaintiff entitled to an injunction *pendente lite?*

Without reciting or summarizing the allegations of the complaint, or repeating the averments of the affidavits, it is sufficient to state that the primary question involved, as to the sufficiency of the complaint, is whether the city of New York has a legal right to operate municipal buses on its public streets.

In the cases of *Browne* v. *City of New York* and *Schieffelin* v. *Mills* (241 N. Y. 96) it was held that at the time those cases were decided, in October, 1925, the City Home Rule Law of 1924 (Laws of 1924, chap. 363) did not authorize the city to operate omnibuses.

Article II, section 11, of the City Home Rule Law, upon which the city relied at that time in its attempt to operate buses, was as follows: " Power of cities to adopt and amend local laws. 1. The local legislative body of a city shall have power to adopt and amend local laws in relation to the property, affairs or government of the city " (a) " relating to the powers, duties  *  *  *  of all officers and employees of the city," (b) " the transaction of its business," (c) " the management and use of its streets and property," (d) " the wages or salaries  *  *  *  of persons employed by any contractor or subcontractor," (e) " the government and regulation of the conduct of its inhabitants and the protection of their property, safety and health."

In the *Browne Case* (*supra*) it was held that the right to own and operate buses as. a part of the city government did. not come within any of the five classes here enumerated.

By chapter 670 of the Laws of 1928 and chapter 646 of the Laws of 1929 the above-quoted section 11 of the City Home Rule Law was amended to read in part as follows: " Unless hereafter restricted by the legislature under the provisions of section one of article twelve of the constitution, the local legislative body of a city shall have power to adopt and amend local laws in relation to the property, affairs or government of a city *including but not limited to*," and then follow the five classes above enumerated in the original law, and it is now claimed on behalf of the city that the inclusion of the words " including but not limited " by chapter 670 of the Laws of 1928 gave to the city a general and unlimited power of local government, including the right to own or lease and operate municipal buses; while on behalf of the plaintiff it is argued that the amendment confers no such power, and that if the Legislature had intended to give the city power to go into the business of operating buses it would have said so in unequivocal terms, which are not to be found in said amendment, and this contention of the plaintiff was upheld in the court below.

In the *Browne Case* (*supra*) the city undertook, by local laws, " to establish a route or routes for the operation of municipal buses," and the Court of Appeals, in declaring its lack of power to do so, said: " *There are Constitutions in some of the States whereby cities are empowered in general terms to frame their own governments. When that authority is conferred, there is no restriction upon the power of the local legislative body,* except the implied one that what

is embodied in the charter must have some appropriate relation to cities and their government. Transportation is a city purpose. (*Sun Printing & Pub. Assn.* v. *Mayor, etc., of N. Y.*, 152 N. Y. 257.) It follows that where the power of local government is general, cities may own and operate their own lines of transportation. [Citing California cases.] *But neither the Constitution of New York nor the City Home Rule Law confers these blanket powers upon the cities of this State.* The local laws must touch a city in its property, affairs or government, but this alone will not support them. There is yet another restriction. They must touch the city's property, affairs or government in one or more of certain enumerated ways. * * * Our decision in *Brooklyn City R. R. Co.* v. *Whalen* (229 N. Y. 570), which held that the city was without power to operate omnibus and stage routes, was made in 1920. In that year and annually thereafter the Legislature has had before it bills for the amendment of the charter by conferring authority to establish a municipal bus line. In every instance the bills have failed. The Legislatures of 1922 and 1923, which adopted the resolutions for the amendment of article XII, and the Legislature of 1924, which passed the City Home Rule Law, refused their assent to such bills like the Legislatures before and after. It is hardly conceivable that they would have persisted in that refusal if they intended all the time that the power should exist. Either they would have passed the special laws or reframed the resolutions or the general law. *They would have said in so many words that the city might establish its own public utilities and operate them itself. They would not have cloaked their meaning under a general grant of power to modify the powers and duties of officers and employees.* * * * The difficulty has not been removed, therefore, by permitting it to regulate the use of streets. The deeper difficulty remains that it may not be a carrier itself. If the route were to be over private property, and not upon the streets at all, or if it were even in the upper air, the city would even then be hampered by the denial of power to embark upon the venture. * * * If the act of 1924 (The City Home Rule Law) was framed in the belief that cities would have the power thereafter to become common carriers of passengers, its provisions are more significant for what they omit than for what they contain. The subject of municipal transportation had long agitated the public mind, and never more than then. We have seen that as the result of injunctions against the operation of municipal bus lines which had been granted by the courts, repeated applications had been made to the Legislature in behalf of the city of New York to enlarge the city's power and that all bills directed to that end had been rejected. We are now told

that the same Legislature was granting with one hand what it was withholding with the other. The indefinite statement that cities might regulate the acquisition, care, management and use of their streets and property, neutralized, it is said, the failure to make explicit grant of the power so clamorously demanded and steadily refused. A decent respect for a co-ordinate department of the government forbids the judiciary to assume that the lawmakers, intending to confer the power, would have so mystified the grant. *In this State, even if not elsewhere, municipal transportation upon a scale so extensive without supervision or restriction is a notable innovation. The colorless words chosen were singularly inept, if they were intended to express approval of a departure so momentous.*" (Italics are the writer's.)

My understanding of this declaration of the Court of Appeals is that a city in this State is without power to do what the defendants have threatened, *i. e.*, to establish and operate municipal bus lines, unless there is an express delegation of such power by the State Legislature in language that clearly and unmistakably shows that such was the intention of the Legislature. The amendment of article II, section 11, of the Home Rule Law by chapter 670 of the Laws of 1928 and chapter 646 of the Laws of 1929, upon which the defendants now depend, does not authorize the city to engage in the transportation business by the use of buses, nor can such authority be implied therefrom. Such a " departure " from the ordinary functions of city government, characterized by Judge CARDOZO, writing for the Court of Appeals in the *Browne Case* (*supra*), as a " notable innovation " and as " momentous," requires an enactment plainly saying in so many words " that the city might establish its own public utilities and operate them itself." The amendments of 1928 and 1929 do not do that.

The complaint states a cause of action to restrain the defendants from their threatened operation of municipal buses, and it follows that they should be enjoined from spending city moneys or incurring obligations in connection with their bus projects during the pendency of this action.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

LAZANSKY, P. J., YOUNG, HAGARTY and JOHNSTON, JJ., concur.

Order granting a motion for a preliminary injunction and denying defendants' motion to dismiss the complaint affirmed, with ten dollars costs and disbursements, with leave to defendants to answer within ten days from the entry of the order herein.